[Cite as *State v. Johnson*, 2011-Ohio-6417.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 25620 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JERRON W. JOHNSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 03 07 2149 |

DECISION AND JOURNAL ENTRY

Dated: December 14, 2011

BELFANCE, Presiding Judge.

{¶1} Jerron Johnson appeals his convictions for aggravated murder, rape, kidnapping, attempted rape, and aggravated burglary. For the reasons set forth below, we affirm.

I.

{¶2} In 2003, Mr. Johnson was bound over from juvenile court to stand trial for murder and multiple counts of rape. After his arraignment, Mr. Johnson's counsel moved for a competency evaluation. Mr. Johnson was diagnosed with bilateral sensorineural hearing loss at infancy. Further testing confirmed severe hearing loss in both ears. However, he had never learned American Sign Language, nor could he read lips or communicate through speech. In October 2003, Doctor Kristen Haskins diagnosed Mr. Johnson with mild mental retardation. She later acknowledged that her findings might have been an underestimation of Mr. Johnson's true ability given that Mr. Johnson was given a test that called for spoken English. When she administered the Test of Nonverbal Intelligence—Third Edition (TONI-3), Mr. Johnson's scores

increased significantly. In November 2003, the trial court determined that Mr. Johnson was not competent to stand trial and ordered him to the forensic unit at Twin Valley Behavioral Healthcare.

{¶3} Over the next several years, numerous evaluations were undertaken. The doctors conducting the evaluations consistently concluded that Mr. Johnson did not have any psychosis or mental impairment. The staff at Twin Valley worked with Mr. Johnson to develop his ability to communicate both with and without a translator. Twin Valley staff evaluated Mr. Johnson on a six-month basis, and the reports indicated that Mr. Johnson was making progress, expanding his vocabulary and displaying an understanding of basic legal concepts. The Twin Valley educators described him as "'bright intellectually,' but limited in language."

{¶4} In November 2004, Dr. Bob Stinson administered the Nonverbal Subtest of the Validity Indicator Profile (VIP), and Mr. Johnson's performance led Dr. Stinson to opine that "[a] conservative estimate would place Mr. Johnson in the Below Average reasoning ability range[, but a] better estimate may be that his reasoning ability is at least Low Average to Average." By 2005, Timothy Coon, a psychology assistant at Twin Valley, reported that Mr. Johnson was showing "a significant increase in [his] motivation and level of engagement [regarding] his competency restoration." According to Mr. Coon, Mr. Johnson "asked questions to clarify several legal concepts and processes * * * [and his] understanding of the material appears to be accurate and consistent."

{¶5} According to several doctors, Mr. Johnson eventually began to display signs of malingering, intentionally holding back his progress and sabotaging attempts to evaluate him. In a June 2007 report, Dr. Stinson, who had evaluated Mr. Johnson multiple times since 2004, attempted to capture precisely "how strongly Mr. Johnson impressed [him] as being

uncooperative and * * * intentionally giving wrong answers to questions[.]" According to Dr. Stinson's June 2007 report, Mr. Johnson's performance on one test was so poor "it is essentially a certainty that [Mr. Johnson] knew the correct answers and intentionally gave the wrong answers."

{¶6} On July 18, 2008, the trial court determined that Mr. Johnson was competent. It based its determination on the June 2007 report of Dr. Stinson and the February 2008 report of Dr. Steven Neuhaus, who had previously conducted independent evaluations of Mr. Johnson in November 2006 and January 2007. The trial court, quoting Dr. Neuhaus' report, noted that Dr. Neuhaus had seen "nothing in Mr. Johnson's record or overall presentation that would allow [him] to easily contradict or otherwise disagree with the opinion of Dr. Stinson based on the hospital's ongoing contact and treatment of the defendant." Mr. Johnson was subsequently remanded to jail.

{¶7} At a hearing on February 20, 2009, Mr. Johnson's counsel made an oral motion for a new competency evaluation, which the trial court granted. Again, Dr. Stinson evaluated Mr. Johnson and concluded that he was malingering and that he was able to understand the proceedings. On July 15, 2009, the trial court determined that Mr. Johnson was competent to stand trial.

{¶8} On April 9, 2010, the trial court held a status hearing, at which Mr. Johnson waived his right to a jury trial. At that hearing, the following exchange occurred:

> "[Prosecutor]: Your Honor, may we just make a note for the record, and if [defense counsel] would agree, that I must say that this is probably the most attentive I've ever seen Mr. [Johnson] during these court proceedings. It is quite apparent that he is following along and is engaged in what we are doing here today.
>
> "Would you agree, [defense counsel]?

"[Defense counsel]: Yes."

{¶9}   Mr. Johnson's trial commenced on August 10, 2010.  On the first day of trial, but before the proceedings commenced, Mr. Johnson's counsel requested that an independent competency evaluation be conducted on Mr. Johnson, which the trial court denied.  Mr. Johnson's counsel renewed his motion for a new competency evaluation during the trial.  Following a bench trial, the trial court convicted Mr. Johnson of aggravated murder, kidnapping, aggravated burglary, attempted rape, and three counts of rape.  The trial court sentenced him to a term of life in prison with the possibility of parole after 20 years.

{¶10}  Mr. Johnson has appealed, raising a single assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

"THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT JOHNSON'S CONSTITUTIONAL DUE PROCESS RIGHTS, IN DENYING APPELLANT JOHNSON'S REPEATED MOTIONS FOR A CURRENT AND INDEPENDENT PSYCHOLOGICAL EVALUATION OF HIS COMPETENCY TO STAND TRIAL, AND IN PROCEEDING TO TRIAL BASED UPON A COMPETENCY EVALUATION THAT WAS OVER ONE YEAR OLD."

{¶11}  Mr. Johnson essentially alleges that, because it had been over a year since he had been evaluated, the trial court was required to order an independent evaluation when his counsel raised the issue of competency on the day of trial.  We disagree.

{¶12}  R.C. 2945.37 protects a defendant's right not to be tried or convicted while incompetent, which is a fundamental due process right. *State v. Were* (2002), 94 Ohio St.3d 173, 174.  The test of a defendant's competency to stand trial is """"whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.""" *State v.*

*Rahman* (1986), 23 Ohio St.3d 146, 156, quoting *Dusky v. U.S.* (1960), 362 U.S. 402. R.C. 2945.37(B) provides that:

> "In a criminal action in a court of common pleas, * * * [the] defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion."

However, while the trial court must conduct a hearing if the issue of competency is raised prior to trial, the trial court judge is not mandated to actually order a competency evaluation. Rather, the decision to order a competency evaluation is within the discretion of the trial court. See, R.C. 2945.371(A) ("If the issue of a defendant's competence to stand trial is raised[,] * * * the court *may* order one or more evaluations of the defendant's present mental condition[.]") (Emphasis added.).

{¶13} Accordingly, the question before us is whether the trial court abused its discretion by not ordering a new evaluation. See *State v. Linscott* (Jan 10, 2001), 9th Dist. Nos. 19947, 20021, *3. An abuse of discretion implies that the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

PRETRIAL MOTION

{¶14} During the pendency of his case, Mr. Johnson underwent numerous evaluations with Dr. Stinson alone performing six separate evaluations. While there is no doubt that Mr. Johnson originally lacked the ability to participate in his criminal proceedings, the evaluations indicated consistent progress on Mr. Johnson's part until 2007. At that point, Dr. Stinson became convinced that Mr. Johnson had begun to malinger. When given tests designed to test whether he was malingering, Mr. Johnson would initially refuse to participate and then proceed to perform so badly that Dr. Stinson concluded that it was a near certainty that he was

malingering. Dr. Neuhaus, who performed an independent evaluation, did not find any fault with Dr. Stinson's conclusions.

{¶15} The trial court found Mr. Johnson competent to stand trial on July 18, 2008. Nonetheless, when Mr. Johnson's counsel requested a new evaluation, the trial court granted the request, and Dr. Stinson performed a new evaluation in April 2009. The trial court then held a competency hearing on June 24, 2009. At that hearing, Dr. Stinson testified that Mr. Johnson's results on the VIP he administered in 2007 were "essentially the opposite of what you would expect on a predicted learning curve[]" in that Mr. Johnson "got all of the easiest [questions] wrong and then sloped up to random responding, because as the items became difficult, [Mr. Johnson] could no longer intentionally give the wrong answer." Following the hearing, the trial court issued its finding of competency. Based on the record before us, it does not appear that Mr. Johnson's counsel raised the issue of Mr. Johnson's competency again until the day of trial when his counsel expressed the concern that Mr. Johnson's communication skills had deteriorated to the point that he could not assist in his defense. Mr. Johnson's counsel suggested that this deterioration could have been caused by Mr. Johnson being in jail instead of receiving instruction at Twin Valley.

{¶16} However, four months prior to trial, the trial court had held a hearing, at which Mr. Johnson had waived his right to a jury trial. At that hearing, Mr. Johnson's counsel not only failed to voice any concern about his competency to waive a jury trial but also agreed when the prosecutor commented that he had never seen Mr. Johnson more attentive. At that point, Mr. Johnson would have been in jail for over eight months.

{¶17} By the time Mr. Johnson's counsel requested a new competency evaluation on the day of trial, Mr. Johnson had been evaluated six times by Dr. Stinson and twice by Dr. Neuhaus.

In his most recent reports, Dr. Stinson had concluded that Mr. Johnson was competent to stand trial and was malingering, a conclusion with which Dr. Neuhaus did not find fault. Over the course of evaluations over the years, neither the State nor Defense counsel objected to the qualifications of either doctor, nor did they object to the methods the doctors used to evaluate Mr. Johnson. Furthermore, while Dr. Stinson acknowledged that regression could occur if Mr. Johnson was in jail as opposed to at Twin Valley, Mr. Johnson's counsel had not expressed any concern that he was regressing until the day of trial; in fact, his counsel had apparently believed him competent enough to waive his right to a jury trial only four months earlier.

{¶18} The concerns of Mr. Johnson's counsel seem to have stemmed from the difficulty of communicating with Mr. Johnson as well as Mr. Johnson not assisting in his defense. Mr. Johnson's counsel told the trial court that "[c]ommunicating with [Mr. Johnson] has been * * * the most difficult task [he had] ever had as a defense attorney[.]" He also related to the trial court that Mr. Johnson "has not been able to give us any rational facts, witnesses, dates or defenses to any of these charges."

{¶19} When Mr. Johnson's counsel raised the issue of his competency on the day his trial was to commence, the trial court held a hearing. The only new evidence presented was Mr. Johnson's counsel's assertion that communicating with Mr. Johnson was extremely difficult. However, the trial court had multiple reports from doctors who opined that Mr. Johnson was not mentally ill, was not mentally handicapped, was capable of contributing in his own defense, and was malingering. Mr. Johnson has not pointed to any case that indicates the lay opinion of counsel, without further support, was enough to refute the opinion of an evaluating physician who had conducted formal testing. Furthermore, given the reports of Dr. Stinson and Dr. Neuhaus that Mr. Johnson was malingering, the fact that Mr. Johnson did not give his counsel

"any rational facts, witnesses, dates or defenses to any of these charges[]" could well have been a refusal to cooperate; and, refusing to cooperate with one's defense is not the same as not being competent to do so. See, e.g., *State v. Kelly*, 10th Dist. No. 07AP-840, 2008-Ohio-4683, at ¶33. Accordingly, the trial court did not abuse its discretion when, after holding a hearing on the matter, it denied Mr. Johnson's counsel's request for a new competency evaluation.

### MIDTRIAL MOTION

**{¶20}** At the end of the State's case, Mr. Johnson's counsel again moved for a new competency evaluation. In support, Mr. Johnson's counsel told the trial court the following:

> "First of all, as an officer of this Court, I will say that I think the Court has gone to extreme lengths to accommodate Mr. Johnson's developmental issues.

> "We have four very qualified engaged interpreters here and I have no objection whatsoever with what it is they are doing here in the courtroom.

> "And I will also indicate as an officer of this Court that I believe that [Mr. Johnson] has been watching the interpreters, he's paying attention, he is looking at them.

> "He is not falling asleep, he has not nodded off.

> "He is looking at them.

> "But my concern is what is going on inside [Mr. Johnson's] head. And, you know, I have a [young] child, and I can sit her[] in front of the TV and she'll watch the TV for as long as it's on, but I don't know that she knows what's going on inside of her head with respect to what she sees.

> "And I will tell you, again, as an officer of the Court, that we've heard thousands and thousands of questions being asked, and thousands and thousands of answers being given, and not once has [Mr. Johnson] stopped to ask for clarification or to make a suggestion, or to offer any insight or argument to anything that's gone on here; and, quite frankly, from my perspective, he has sat and passively, although attentively to what is going on here, and does not have the current ability to assist in his defense or understand with any cognitive abilities the nature of these proceedings and therefore, again, raise the competency issue."

**{¶21}** While a court must hold a competency hearing if the issue is raised prior to trial, "[i]f [competency] is raised after trial has begun, the court shall hold a competency hearing *only*

*for good cause shown.*" (Emphasis sic.) *Rahman,* 23 Ohio St.3d at 156. "[G]ood cause" requiring a competency hearing may be shown by "objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's own conduct during the trial[.]" Id., citing *State v. Chapin* (1981), 67 Ohio St.2d 437, 441-442; see, also, *Chapin*, 67 Ohio St.2d at paragraph one of the syllabus ("An unqualified suggestion of defendant's incompetency to stand trial by defense counsel during trial without additional objective indications such as, but not limited to, supplemental medical reports, defendant's conduct at trial or specific reference to defendant's irrational behavior or the like does not meet the 'good cause shown' standard of R.C. 2945.37.").

{¶22} As discussed above, the doctors who repeatedly evaluated Mr. Johnson found Mr. Johnson competent to stand trial and also concluded that he was malingering. Although counsel was understandably concerned about Mr. Johnson's lack of communication with counsel at trial and felt that this could be indicative of a lack of cognitive ability, the doctors, psychology assistants and educators who interacted over the years with Mr. Johnson reported that Mr. Johnson was mentally alert and had cognitive abilities. The doctors who evaluated Mr. Johnson opined that Mr. Johnson had sufficient cognitive abilities to understand the nature of the legal proceedings brought against him. Moreover, there was no indication at trial that Mr. Johnson lacked the capacity to understand what was happening at trial. Mr. Johnson did not tell his attorneys that he could not understand the proceedings, nor did he display any peculiar or unusual behavior that would have caused concern. *Chapin*, 67 Ohio St.2d at 441-442; see, also, *State v. Filiaggi* (1999), 86 Ohio St.3d 230, 236-237. Mr. Johnson's counsel described Mr. Johnson as being alert and following the interpreters. The State and the trial court both made similar statements into the record at different points during the trial. We also note that the

interpreters, during the course of the trial, would signal their need to stop or slow down the proceedings so that they could ensure that Mr. Johnson was receiving all testimony and evidence as it was being presented.

{¶23} Accordingly, based upon the record before us, we cannot say that the trial court abused its discretion when it denied requests for a competency evaluation made just prior to the commencement of trial and during Mr. Johnson's trial.

{¶24} Mr. Johnson's assignment of error is overruled.

### III.

{¶25} Mr. Johnson's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.