[Cite as *State v. Queen*, 2023-Ohio-594.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 30138 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM QUEEN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 19 10 3773 |

DECISION AND JOURNAL ENTRY

Dated: March 1, 2023

HENSAL, Presiding Judge.

{¶1} William Queen appeals his convictions from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} Mr. Queen connected with T.Q. through a dating application and they eventually met in person one evening at Springfield Lake. When they arrived, Mr. Queen hugged and kissed T.Q., which she thought was flattering. As it began to get late, T.Q. got ready to leave, saying that she wanted to get home to watch a football game and have dinner. Mr. Queen suggested that he join T.Q. at her home for dinner and the game, and T.Q. agreed.

{¶3} At T.Q.'s home, she gave him a tour and then they sat on the couch to continue talking and getting to know each other. According to T.Q., at one point the conversation took an uncomfortable turn so she decided to get up to check on dinner. Mr. Queen followed her and began kissing her from behind, which she enjoyed. Suddenly, he turned T.Q. around and grabbed

her neck, strangling her. He pushed her down the hallway and into a bedroom where he pressed her up against the closet door, restraining her arms over her head. He then spun her around, bent her over the bed, and began pushing down her pants. According to T.Q., she told him to stop, but Mr. Queen did not listen and proceeded to penetrate her vaginally and anally. After he finished, T.Q. told him to leave. She did not seek any assistance until after speaking with a co-worker the following day.

{¶4} The Grand Jury indicted Mr. Queen on one count of felonious assault and two counts of rape. The rape counts each contained a sexually violent offender specification. A jury found Mr. Queen guilty of all the offenses. The trial court found that Mr. Queen was a sexually violent offender and sentenced him to a total of 30 years to life imprisonment. Mr. Queen has appealed, assigning two errors.

## II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF FELONIOUS ASSAULT TO WARRANT THE CASE BEING SUBMITTED TO THE JURY.

{¶5} In his first assignment of error, Mr. Queen argues that the trial court should have granted his motion for judgment of acquittal on the felonious assault charge. Under Criminal Rule 29(A), a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29(A). Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind

of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶6} Section 2903.11(A) provides in relevant part that "[n]o person shall knowingly * * * cause serious physical harm to another[.]" Mr. Queen argues that the State failed to present any evidence that he caused serious physical harm to T.Q. The definition of "serious physical harm" includes "[a]ny physical harm that carries a substantial risk of death;" "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;" [a]ny physical harm that involves * * * some temporary, serious disfigurement;" and "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b-e).

{¶7} T.Q. testified that Mr. Queen was kissing her neck from behind in the kitchen but then turned her around and grabbed her throat. He pushed her up against a wall with his hands on her throat, causing her to be unable to breathe. He kept his hands around her throat, strangling her, as he pushed her down the hallway to her bedroom. Once in the bedroom, he removed one of the hands from her throat so that he could hold her arms above her head. According to T.Q., around that time, her mind went blank and she was no longer sure exactly what was going on. She could not breathe, started to panic, and felt her body go numb from head to toe.

{¶8} A sexual assault nurse examiner testified that T.Q. had bruising on both sides of her neck that was consistent with strangulation. She explained that strangulation causes a lack of blood flow to the brain and makes it difficult for blood to return from the brain. If blood cannot

return from the brain, it causes damage to blood vessels in the neck and brain. Only 11 pounds of pressure on the carotid arteries will stop blood flow to the brain, causing someone to feel like they are going to die. This can also cause incontinence, loss of consciousness, vomiting, and drooling. The nurse also testified that, without oxygen, millions of cells die each second, which can lead to brain damage, bleeding within the brain, and stroke.

{¶9} Viewing the evidence in a light most favorable to the State, there was evidence that Mr. Queen caused temporary, substantial incapacity to T.Q. when he strangled her, preventing her from breathing and causing her mind to go blank and her entire body numb. *See State v. Driesbaugh*, 11th Dist. Portage No. 2002-P-0017, 2003-Ohio-3866, ¶ 47 (concluding that victim whose arms and legs would sporadically go numb and make him unsteady following collision had suffered some temporary substantial incapacity). We, therefore, conclude that the trial court did not err when it denied Mr. Queen's motion for judgment of acquittal. Mr. Queen's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} In his second assignment of error, Mr. Queen argues that his convictions are against the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *Thompkins*, 78

Ohio St.3d at 387. An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶11} Mr. Queen argues that his rape convictions are against the manifest weight of the evidence because the State failed to prove force or threat of force. He notes that, when T.Q. spoke to law enforcement, she told a detective that she thought it was "kinky" when Mr. Queen pushed her up against the wall. She also said that, when Mr. Queen held her hands up in the air with one hand and had the other around her neck, she thought that he must like rough sex. She also stated several times during the interview that the sexual activity was consensual. According to Mr. Queen, T.Q.'s prior statements to law enforcement demonstrate that her testimony at trial that none of the sexual activity was consensual was not credible.

{¶12} The detective testified that T.Q. told him that she would have been fine with having sex with Mr. Queen and that she was fine with what he did "[u]p to a certain point[.]" The detective testified that T.Q. told him the "rough sex was not consensual[,]" which was consistent with her trial testimony. T.Q. testified that she told Mr. Queen "stop" and "don't," but Mr. Queen did not stop. It is not inconsistent for T.Q. to think that something Mr. Queen did was "kinky" or that he enjoyed rough sex while at the same time not consenting to such conduct. The jury was in the best position to assess the credibility of the testifying witnesses and decide whether T.Q. was telling the truth when she stated that she did not consent to sexual intercourse with Mr. Queen. *State v. Piatt*, 9th Dist. Wayne No. 19CA0023, 2020-Ohio-1177, ¶ 36. Upon review of the record, we conclude that Mr. Queen has not established that this is the exceptional case where the evidence weighs heavily against his rape convictions. *See id.* at ¶ 37.

{¶13} Mr. Queen next argues that his felonious assault conviction is against the manifest weight of the evidence because there was no evidence of serious physical harm. He notes that T.Q. did not seek any medical treatment following the alleged strangulation and only went for an examination because of the alleged sexual assault, not because of any injury to her throat. He argues that there was no evidence of any extreme pain, long lasting injury, or serious risk of death. He also notes that T.Q. never told him to stop during the alleged strangulation, did not lose consciousness, and did not have any physical injury besides a couple of small bruises.

{¶14} Under Section 2901.01(A)(5)(c), incapacity constitutes serious physical harm if it is permanent "whether partial or total" or if the incapacity is "temporary" and "substantial[.]" A loss of consciousness would constitute total incapacity, but the statute does not require temporary incapacity to be "total" only "substantial." T.Q. testified that, as Mr. Queen pushed her by her throat down the hallway from the kitchen into the bedroom, he had both hands around her neck, preventing her from breathing. During that time, her mind went blank and she went "numb completely from head to toe."

{¶15} Upon review of the record, we conclude that the jury did not lose its way when it determined that Mr. Queen caused serious physical harm to T.Q. Accordingly, his conviction for felonious assault is not against the manifest weight of the evidence.

{¶16} Mr. Queen also argues that the trial court's findings that he is a sexually violent predator are against the manifest weight of the evidence. Under Section 2971.01(H)(1), a sexually violent predator is someone who "on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." Section 2971.01(H)(2) provides factors that a court may consider as evidence tending to indicate that there is a likelihood that a person will engage in a sexually violent offense in the future, but it does not

require the court to engage in an analysis of all of the factors. *State v. Pyle*, 9th Dist. Summit No. 28802, 2018-Ohio-3160, ¶ 33. One of the factors is that the person "has been convicted two or more times, in separate criminal actions, of a sexually oriented offense[.] A finding of guilt in the present case does not qualify because it does not constitute a conviction. *See State v. Wooten*, 9th Dist. Lorain No. 13CA010510, 2014-Ohio-3980, ¶ 38.

**{¶17}** Mr. Queen argues that the only evidence presented by the State regarding whether he is a sexually violent predator was the journal entry of a prior conviction he had. He also argues there was no evidence or findings of any of the factors under Section 2971.01(H)(2).

**{¶18}** Regarding the factors a court may consider under Section 2971.01(H)(2), subsection (f) identifies "[a]ny other relevant evidence" as a factor. A detective testified that he investigated Mr. Queen's prior criminal history and learned that Mr. Queen had previously been convicted of two counts of rape in Medina County. The detective explained that, although the counts were combined within the same case number, his investigation uncovered that they involved two different victims. The detective also testified that the court in the Medina County case found that Mr. Queen was a sexual predator.

**{¶19}** In finding that Mr. Queen is a sexually violent predator, the trial court explained that, although a prior conviction is not required, Mr. Queen had a prior conviction on two separate counts. It also noted that there was a prior finding by a court that Mr. Queen is a sexually violent predator.

**{¶20}** The State argues that, in addition to the trial court's oral findings, it may have taken note that Mr. Queen was on post-release control at the time he committed his offenses in the Medina case. It may also have discerned that Mr. Queen had been released from prison for less than five years when he attacked T.Q.

**{¶21}** Upon review of the record, we conclude that Mr. Queen's prior convictions for rape against different individuals and the details of his attack of T.Q. support the trial court's determination that he is a sexually violent predator. The court's sexually-violent-predator findings are not against the manifest weight of the evidence. Mr. Queen's second assignment of error is overruled.

### III.

**{¶22}** Mr. Queen's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SUTTON, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.