**[Cite as *State v. Adkins*, 2023-Ohio-3000.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     22AP0022 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLAS VAN ADKINS | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellant | CASE No.     2022 CR-B 000217 |

DECISION AND JOURNAL ENTRY

Dated: August 28, 2023

HENSAL, Judge.

{¶1}     Defendant-Appellant, Nicholas Adkins, appeals from the judgment of the Wayne County Municipal Court.  This Court affirms.

I.

{¶2}     In July 2020, Mr. Adkins became subject to a domestic violence civil protection order.  The order named his ex-wife and her two adult children as protected parties.  The order was originally set to terminate after one year, but the parties later agreed to a five-year extension.  The modification took effect in June 2021, resulting in a new termination date of July 2026.  Relevant to this appeal, the order prohibited Mr. Adkins from initiating contact with his ex-wife or her daughter, entering their place of employment, or being within 500 feet of any place he knew or should have known they were likely to be.

{¶3}     In late November 2021, the ex-wife began receiving text messages from an unknown number.  The content of the messages led her to suspect Mr. Adkins was the individual

messaging her. Her suspicions were confirmed when he started sending her picture messages and messages through a social media application. The ex-wife filed several police reports based on messages Mr. Adkins sent her in November and December 2021.

{¶4} On January 15, 2022, Mr. Adkins entered a bar where his ex-wife was working. She demanded that he leave, and Mr. Adkins complied. Because she was not sure whether he knew she worked at the bar, the ex-wife did not initially report the incident to the police. Mr. Adkins returned to the bar on January 28, 2022, however, and demanded someone call his ex-wife. The ex-wife was not working at the time, but her daughter was. Mr. Adkins approached the daughter and told her to call her mother. He left shortly thereafter, and the bar staff contacted the police.

{¶5} Later that same day, the ex-wife arrived at the bar to work the evening shift. Sometime after midnight (i.e., on January 29, 2022), Mr. Adkins returned to the bar. He did not ask for his ex-wife but took a seat in a booth. When a coworker told the ex-wife Mr. Adkins was there, she contacted the police. Mr. Adkins was still present when the police arrived.

{¶6} Mr. Adkins was charged with four counts of violating a protection order and two counts of menacing by stalking. Two counts of violating a protection order pertained to the messages he sent his ex-wife in November and December 2021. The remaining two counts of violating a protection order stemmed from Mr. Adkins entering the bar where his ex-wife and her daughter worked on January 28, 2022, and January 29, 2022. Regarding the menacing by stalking charges, one count named the ex-wife as the victim, and the other named the daughter.

{¶7} Mr. Adkins was appointed counsel, and the matter proceeded to a bench trial. Following opening statements, defense counsel expressed a concern that Mr. Adkins might not be competent to stand trial. The trial court heard limited testimony on that issue, found no good cause

for further hearing, and ordered the trial to proceed. At its conclusion, the court found Mr. Adkins guilty on all counts. The court sentenced him to a total of 537 days in jail and fines.

{¶8} Mr. Adkins now appeals from his convictions and raises four assignments of error for review. For ease of analysis, we rearrange his assignments of error.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED AN ERROR WHEN IT FOUND THAT THERE IS NO GOOD CAUSE SHOWN TO ORDER A COMPETENCY EXAM OF MR. ADKINS.

{¶9} In his third assignment of error, Mr. Adkins argues the trial court abused its discretion when it failed to hold a competency hearing. We disagree.

{¶10} "A criminal defendant is presumed competent." *State v. Coker*, 9th Dist. Summit No. 29540, 2021-Ohio-2910, ¶ 8. If defense counsel raises the issue of a defendant's competence after the trial has commenced, "the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." R.C. 2945.37(B). The defense bears the burden of establishing good cause for a competency hearing. *Elyria v. Bozman*, 9th Dist. Lorain No. 01CA007899, 2002-Ohio-2644, ¶ 7. "'[G]ood cause' * * * may be shown by 'objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's own conduct during the trial * * *.'" *State v. Johnson*, 9th Dist. Summit No. 25620, 2011-Ohio-6417, ¶ 21, quoting *State v. Rahman*, 23 Ohio St.3d 146, 156 (1986).

{¶11} An appellate court applies the abuse of discretion standard when reviewing a trial court's decision whether to hold a competency hearing once trial has commenced. *Rahman* at 156. The abuse of discretion standard implies that a trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse

of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). This Court is mindful that, "with respect to competency issues, deference should be granted to those '"who see and hear what goes on in the courtroom."'" *State v. Knox*, 9th Dist. Lorain No. 17CA011233, 2019-Ohio-2265, ¶ 11, quoting *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 68, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999).

{¶12} After opening statements, defense counsel informed the trial court there was a possible issue with Mr. Adkins' competence to stand trial. Defense counsel stated: "the more time I spend discussing this matter with Mr. Adkins, the less confident I am in his ability to assist the defense in any kind of rational way." Defense counsel gave a minimal explanation for his concerns. He only stated that information he had received from Mr. Adkins earlier that morning had turned out not to be "quite accurate * * *."

{¶13} After listening to defense counsel, the trial court noted that the burden of establishing good cause for a competency hearing fell upon the defense. The court asked defense counsel whether he wished to present any evidence. Defense counsel declined, indicating that there were no witnesses he could call to testify about Mr. Adkins' competence, and he did not ask for additional time to secure any such testimony. The trial court then permitted the State to briefly examine the ex-wife on the competency issue. The ex-wife testified that Mr. Adkins routinely lied over the course of their relationship and frequently made false statements to benefit himself or manipulate others. After hearing her testimony, the trial court noted that defense counsel had failed to offer any evidence to establish good cause while the ex-wife's testimony tended to show Mr. Adkins simply had a history of manipulation and lying. Based on those facts, the trial court declined to find good cause for a competency hearing and proceeded with the trial.

**{¶14}** Mr. Adkins argues the trial court abused its discretion when it refused to conduct a competency hearing. He notes that less than one week elapsed between the day the court appointed him counsel and the day his trial commenced. Given that short timeframe, Mr. Adkins argues it was "highly doubtful" either defense counsel or the prosecution had sufficient time to consider his competency. According to Mr. Adkins, the trial court should have conducted a competency hearing to ensure his right to a fair trial.

**{¶15}** Having reviewed the record, we cannot conclude the trial court went so far as to abuse its discretion when it refused to conduct a competency hearing. *See Rahman*, 23 Ohio St.3d at 156. The only evidence defense counsel offered in questioning Mr. Adkins' competence was his own statement that Mr. Adkins may have given him inaccurate information about a factual matter. *See Bozman*, 2002-Ohio-2644, at ¶ 7 (court may consider statements made by defense counsel regarding competency). He did not point to any irrational behavior on the part of Mr. Adkins, and there was no indication Mr. Adkins lacked the capacity to understand the proceedings. *See Johnson*, 2011-Ohio-6417, at ¶ 21-22. Further, there were no other indications to suggest Mr. Adkins was incompetent, such as medical reports or questionable conduct on his part during the trial. *See id.* As noted, the court was only required to conduct a competency hearing if the defense first established good cause for a hearing existed. *See* R.C. 2945.37(B); *Bozman* at ¶ 7. The trial court heard testimony that Mr. Adkins simply had a history of lying and being manipulative. The court reasonably could have concluded that was the reason he failed to provide his counsel with entirely accurate information. Because Mr. Adkins has not shown the trial court abused its discretion by refusing to hold a competency hearing, his third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

MR. ADKIN'S CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE[.]

**{¶16}** In his first assignment of error, Mr. Adkins argues his convictions for violating a protection order are based on insufficient evidence. According to Mr. Adkins, the State never proved he was served with a copy of the protection order he allegedly violated. This Court rejects his argument.

**{¶17}** Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶18}** Relevant to this appeal, Revised Code Section 2919.27(A)(1) prohibits any person from recklessly violating the terms of a domestic violence civil protection order. "In *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, the Ohio Supreme Court held that 'the [S]tate must establish beyond a reasonable doubt that it served the defendant with the [protection] order before the alleged violation." (Alterations sic.) *State v. Meinke*, 9th Dist. Lorain Nos. 15CA010738, 15CA010739, 2017-Ohio-7787, ¶ 9, quoting *Smith* at ¶ 20. Yet, the General Assembly later amended Section 2919.27 to specifically eliminate the need for proof of service. *Meinke* at ¶ 9, fn. 1. Effective September 27, 2017, the State need only prove a defendant was shown a copy of the protection order or was informed of its issuance by a judge, magistrate, or law enforcement officer. R.C. 2919.27(D).

{¶19} Mr. Adkins argues his convictions for violating a protection order are based on insufficient evidence because the State failed to prove he was served with the order. He relies on *Smith*. As noted, however, *Smith* pre-dated legislative amendments to Section 2919.27. Following those amendments, the State only had to prove Mr. Adkins was shown a copy of the protection order or was told about it by a judge, magistrate, or law enforcement officer. R.C. 2919.27(D).

{¶20} The record reflects defense counsel repeatedly acknowledged Mr. Adkins was subject to a protection order at trial. During closing argument, defense counsel stated:

> Now there is no doubt that [Mr. Adkins] knew that there was a protection order, that is true and I have no argument about that. He has testified that he was present when the order was issued. He was present when it was issued for an additional five years, so he was aware of that.

Apart from those statements, the State also presented evidence about the protection order during its case-in-chief. The ex-wife testified that Mr. Adkins was present during the hearing when the protection order against him issued and later agreed to the five-year extension. The State also introduced a copy of a magistrate's decision ordering that the protection order be extended by five years. In that decision, the magistrate specifically noted Mr. Adkins was present at the extension hearing and agreed to the extension. Assuming Mr. Adkins did not waive his sufficiency argument through defense counsel's statements, a rational trier of fact could have found that the State set forth sufficient evidence to prove Mr. Adkins was shown a copy of the protection order or was told about it by a judge or magistrate. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. Thus, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. ADKIN'S CONVICTIONS WERE AGAINST THE WEIGHT OF THE EVIDENCE[.]

**{¶21}** In his second assignment of error, Mr. Adkins argues his convictions for violating a protection order on January 28, 2022, and January 29, 2022, are against the manifest weight of the evidence. We disagree.

**{¶22}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

**{¶23}** The ex-wife testified that Mr. Adkins began sending her cell phone messages in late November 2021 and continued doing so in December 2021. That same month, she started working at a bar in Rittman. She was working there on January 15, 2008, when Mr. Adkins came into the bar with a female. When she saw Mr. Adkins, the ex-wife told him he could not be at the bar and instructed him to leave. Mr. Adkins claimed he was meeting someone there but complied with her request. She did not initially report the incident because she was not sure if Mr. Adkins knew she worked there or if his being there was simply a coincidence.

**{¶24}** The ex-wife's daughter testified that she began working at the same bar as her mother near the end of January 2022. She was working there on January 28th when Mr. Adkins

entered the bar and went directly into the bathroom. When he emerged, Mr. Adkins began yelling, "Call [my ex-wife], call [my ex-wife,] * * * [c]all my ex-wife, tell her that her ex-husband needs to get ahold of her." The daughter estimated that she was standing about six feet away from Mr. Adkins while he yelled. She noticed him holding his chest as if he had been injured. At one point, she testified, he looked at her and specifically told her to call her mom. The daughter testified that Mr. Adkins was not at the bar for very long before he ran out and took off in his car. Before he left, Mr. Adkins instructed her and the other employees not to call the police.

{¶25} A bar employee who was working on January 28, 2022, corroborated the daughter's testimony. She confirmed that Mr. Adkins walked into the bar, went straight into the bathroom, and came out yelling for someone to call the ex-wife. She also heard Mr. Adkins tell the daughter to call her mother. Much like the daughter, the bar employee indicated that Mr. Adkins appeared to be injured. She saw blood on his body and napkins in his hand when he emerged from the bathroom. She also testified that Mr. Adkins was wearing a bulletproof vest.

{¶26} The ex-wife testified that she arrived at the bar several hours later to begin her shift at 5:00 p.m. It was past midnight when a co-worker informed her that Mr. Adkins had come into the bar. The ex-wife looked through the bar's kitchen window and saw Mr. Adkins sitting at a table. She observed him wearing a bullet proof vest. According to the ex-wife, Mr. Adkins "was just kind of sitting there relaxed, lackadaisical, * * * just kind of hanging out." Rather than make contact with him, she called the police.

{¶27} Mr. Adkins claimed that he did not know his ex-wife worked at the bar even after he encountered her there on January 15, 2022. He testified that he had gone to that bar several times in the past and thought she was just there as a customer. When asked why he went back to the bar on January 28, 2022, Mr. Adkins offered two different explanations. First, he claimed he

went to the bar because a friend had invited him there. Second, he claimed he went to the bar because he had been shot twice, needed to check his wound, and believed the bar would be a "safe haven." According to Mr. Adkins, he did not see the daughter working at the bar because he was injured and frantic. He denied ever speaking with her. He testified that he only spoke with one employee. According to Mr. Adkins, he asked that employee whether his ex-wife was working there because he did not want to violate the protection order by being there. He denied ever telling anyone to call his ex-wife. While Mr. Adkins admitted that he returned to the bar sometime after midnight on January 29, 2022, he maintained that he did not know his ex-wife was working there.

{¶28} Having reviewed the record and the arguments presented, this Court concludes Mr. Adkins has not shown this is the exceptional case in which the evidence weighs heavily against his convictions for violating a protection order on January 28, 2022, and January 29, 2022. *See Croghan*, 2019-Ohio-3970, at ¶ 26. While Mr. Adkins claimed he was unaware his ex-wife worked at the bar and came there for reasons unrelated to her, the court heard two different witnesses testify that he repeatedly yelled at the staff to call his ex-wife, directly told the daughter to call her mother, and instructed the bar staff not to call the police. The trier of fact was in the best position to assess the credibility of the testifying witnesses. *See State v. Queen*, 9th Dist. Summit No. 30138, 2023-Ohio-594, ¶ 12. As noted, a conviction is not against the manifest weight of the evidence simply because the tier of fact chose to believe the State's version of the events. *See Warren*, 2020-Ohio-6990, at ¶ 25, quoting *Tolliver*, 2017-Ohio-4214, at ¶ 15. Mr. Adkins has not shown the trier of fact lost its way by rejecting his explanation and convicting him. As such, his second assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT COMMITTED AN (sic) REVERSIBLE ERROR WHEN IT ALLOWED THE STATE TO INTRODUCE PRIOR ACTS DURING THE TRIAL[.]

**{¶29}** In his fourth assignment of error, Mr. Adkins argues the trial court erred when it admitted evidence regarding his prior acts. The court allowed the ex-wife to describe the conduct that led to her securing a protection order against Mr. Adkins. He argues the admission of that testimony violated Evidence Rules 401, 402, and 404(B). Upon review, we reject his argument.

**{¶30}** "Admissibility determinations under the evidentiary rules generally fall within the sound discretion of the trial court." *State v. Tyler*, 9th Dist. Summit No. 29225, 2019-Ohio-4661, ¶ 23. "A trial judge in a bench trial is presumed to know the law and to consider only the relevant, material, and competent evidence in arriving at a decision." *State v. Diaz*, 9th Dist. Lorain No. 02CA008069, 2003-Ohio-1132, ¶ 39. Even if a trial court improperly admits other acts evidence, its error may be harmless if it did not impact the verdict. *See State v. Ali*, 9th Dist. Summit No. 29611, 2021-Ohio-4596, ¶ 39.

**{¶31}** The trial court allowed the ex-wife to testify that she obtained a protection order against Mr. Adkins after he began following her everywhere and threatened to burn down her camper. Defense counsel objected to her testimony on relevancy grounds, noting that the defense had conceded a protection order was in place. The State argued the testimony bore upon the ex-wife's state of mind and the charges of menacing by stalking. In overruling Mr. Adkins' objection, the trial court indicated that it would only consider the testimony for the limited purpose the State had identified.

**{¶32}** Mr. Adkins argues the trial court erred when it allowed his ex-wife to explain why she obtained a protection order against him. According to Mr. Adkins, that testimony only served

to prejudice him. He notes that he stipulated a protection order was in place. Thus, Mr. Adkins insists, the reason why his ex-wife secured the order was irrelevant.

**{¶33}** Upon review, this Court rejects Mr. Adkins' argument. Mr. Adkins has not addressed the trial court's ruling that the ex-wife's testimony bore upon her state of mind and the menacing by stalking counts. *See J.M. v. M.M.*, 9th Dist. Medina No. 15CA0057-M, 2016-Ohio-5368, ¶ 20 (evidence of past abuse relevant to victim's state of mind in determining whether victim had reasonable fear of harm). This Court is not inclined to construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, *8-9 (May 6, 1998). Because this was a bench trial, we presume the trial judge properly applied the law and only considered "relevant, material, and competent evidence in arriving at a decision." *Diaz*, 2003-Ohio-1132, at ¶ 39. Further, even if we were to assume the trial court erred by admitting the testimony at issue, Mr. Adkins has not established resulting prejudice. *See Ali*, 2021-Ohio-4596, at ¶ 39. He has made no attempt to explain how the admission of that testimony impacted the proceedings given the strength of the remaining evidence against him. *See id. See also State v. Robinson*, 9th Dist. Summit No. 29689, 2021-Ohio-1053, ¶ 27-29. Again, this Court will not construct an argument on his behalf. *See* App.R. 16(A)(7); *Cardone* at *8-9. For the foregoing reasons, his fourth assignment of error is overruled.

III.

**{¶34}** Mr. Adkins' assignments of error are overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT


SUTTON, P. J.
STEVENSON, J.
CONCUR.


APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOHN HAMERS, Assistant Prosecuting Attorney, for Appellee.