[Cite as *State v. Cullen*, 2024-Ohio-1916.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-08-016 |
| | : | O P I N I O N |
| - vs - | | 5/20/2024 |
| | : | |
| JONATHAN W. CULLEN, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20210237


Nicholas A. Adkins, Madison County Prosecuting Attorney, and Rachel M. Price and Michael S. Klamo, Assistant Prosecuting Attorneys, for appellee.

Culp, Parsons, and Murray LLC, and Joshua W. Beasley, for appellant.



**BYRNE, J.**

{¶ 1} Jonathan Cullen appeals from his rape conviction in the Madison County Court of Common Pleas. Cullen argues that the court erred by finding him competent to stand trial and by failing to order a professional competency evaluation. For the reasons discussed below, we reject Cullen's arguments and affirm Cullen's conviction.

## I. Factual and Procedural Background

{¶ 2} In December 2021, a Madison County grand jury indicted Cullen on one count of rape. The indictment alleged that the victim was less than 10 years of age at the time of the offense.

{¶ 3} In January 2022, Cullen moved for a competency evaluation pursuant to R.C. 2945.37, 2945.371, and 2945.39. In that motion, Cullen stated that he suffered from a previously diagnosed mental illness, which could affect his ability to comprehend his criminal trial and meaningfully participate in his own defense.

{¶ 4} The court held a pre-trial hearing on the same day Cullen filed his motion for a competency evaluation. At the hearing, defense counsel indicated that he had been informed by Cullen's mother that Cullen, as an infant, suffered a severe infection that affected his brain. Counsel indicated that it could take significant efforts to locate medical records relating to that infection. Counsel also indicated that Cullen had been approved to receive Social Security Disability benefits because of his illness. Counsel stated that based upon his understanding, it would be appropriate for Cullen to be professionally evaluated to determine his competency.

{¶ 5} The court then questioned Cullen at length concerning his understanding of the trial process. Cullen was able to answer some questions appropriately, but also expressed some confusion as to the role of the prosecutor, judge, and jury in a criminal trial. Ultimately, the court continued the hearing for two weeks to allow Cullen's defense counsel to obtain Cullen's medical records from his birth hospital in Texas.

{¶ 6} For the next several months, the court repeatedly attempted to hold the competency hearing. However, at each scheduled hearing, defense counsel indicated that he had not yet received Cullen's medical records and the court granted a brief continuance. Finally, at a hearing in June 2022, defense counsel informed the court that he had confirmed

that Cullen's infant medical records had been purged by the hospital and were not available.

{¶ 7} The court then engaged Cullen in a discussion concerning his understanding of the criminal proceedings. The judge asked Cullen if he knew what his attorney did. Cullen responded, "[h]e helps people try to win their case." When the court asked if Cullen's attorney was a "lawyer," Cullen answered "yes" and also acknowledged that his attorney was representing him in the proceedings.

{¶ 8} The court then directed Cullen's attention to the prosecutor, who was in the courtroom, and asked Cullen if he knew what the prosecutor's "title" was. Cullen stated he did not know. The court then asked if Cullen knew "what [the prosecutor's] job is in here?" Cullen answered, "No, not really." The court reminded Cullen that it had previously indicated that the prosecutor represents the state, and Cullen agreed. The court asked "Do you know what the State is trying to do in this case?" Cullen answered, "Trying to pin something on me for something I didn't even do." When the court asked for clarification, Cullen acknowledged his understanding that he was being charged with rape.

{¶ 9} Cullen stated that he did not know what the prosecutor was going to "try to do in this courtroom" and did not generally know what prosecutors do in a trial. But, as previously stated, Cullen had already expressed his understanding that the prosecutor was "Trying to pin something on me for something I didn't even do."

{¶ 10} Cullen then stated that he knew that the wooden box in the courtroom was where the jury sits and knew that the jury's role was to "find[] the person guilty or not guilty."

{¶ 11} Cullen stated he did not know what the judge does during the trial, initially responding that he believed it was the judge's job to "explain the cases to people." After some prompting, Cullen acknowledged that the judge was a judge and that judges wear robes. The following exchange then occurred:

> THE COURT: And so what do you think my job is? The jury

- 3 -

decides whether or not you are guilty or innocent.[1]

[CULLEN]: Yeah.

THE COURT: What do you think my job is?

[CULLEN]: That's a hard one.

THE COURT: That's fair. You had indicated a moment ago that my job is to explain things to people. If the jury was to find you guilty, whose job would it be to impose sentence?

[CULLEN]: You.

In other words, after a small amount of prompting, Cullen acknowledged the judge's role in sentencing. But this prompting was open-ended; the court never told Cullen that it was responsible for sentencing, and Cullen indicated this was the case on his own.

{¶ 12} Cullen then indicated that he understood where witnesses would sit during trial. He also stated that witnesses provide testimony during the trial.

{¶ 13} The court then questioned Cullen about his previous police interviews and Cullen's communications with his attorney regarding the case. Cullen indicated that he had been able to share his side of the story with his attorney, and indicated that his attorney understood his side of the story.

{¶ 14} After this exchange, defense counsel called Tonya Harper—Cullen's biological mother—to testify. Harper stated that when Cullen was an infant he had a "real bad ear infection" and a "high fever." Harper stated that Cullen started convulsing and stopped breathing. She took him to the hospital. When asked "did that do any permanent damage to him?" Harper answered "yes" and stated that "all through school" Cullen was in classes for children with learning disabilities. When defense counsel asked Harper if she was told that Cullen had suffered "brain damage" as a result of the incident, Harper replied,

---

1. As mentioned above, Cullen had already identified the jury's role in finding the accused "guilty or not guilty."

"Yes." Harper further agreed with defense counsel's assertion that the brain damage that occurred "could not be repaired."

{¶ 15} Harper stated that Cullen was receiving Social Security Disability benefits. She agreed with defense counsel's assertion that Cullen was "developmentally delayed" and that he may have trouble understanding the proceedings.

{¶ 16} On cross-examination, Harper stated that she previously had a copy of Cullen's medical records relating to the childhood infection and hospital visit but that those records "got destroyed" when she moved from Texas to Ohio. Harper also confirmed that Cullen had graduated high school. When asked if she understood court proceedings, Harper stated she understood the proceedings "somewhat." Based on this statement, Harper agreed with the prosecutor's suggestion that she may not be the best person to opine as to whether Cullen could understand the court proceedings.

{¶ 17} At the conclusion of the hearing, defense counsel asked the court for Cullen to "be afforded the opportunity for an appropriate evaluation."

{¶ 18} The court then announced its decision, stating as follows:

> The matter before the Court, again, is an issue raised by the Defendant's motion to determine competence. 2945.37 governs these proceedings. This has been outlined at some length.
>
> The Defense has established a good faith basis to believe that the Defendant has suffered some mental illness or mental disease. The exact nature of that remains unclear due to the inability to acquire any medical records through nobody's fault.
>
> At this point the Court is satisfied that we have reached the end of the road in attempting to acquire any such records. Indeed, the testimony of the Defendant's mother here confirmed that in conjunction with [defense counsel's] efforts, the hospital that provided treatment to the Defendant, had a retention records policy of ten years, unless there was pending litigation. The litigation at issue in this case arose outside of that ten-year time period, thus, it appears that any records that may have once existed have been destroyed.

Conversely, the Defendant's mother had her own copy of the records, and those copies apparently were lost in the process of a move from Texas to Ohio.

In a nutshell there are no records from which the Court can gain any information as it relates to the mental illness or defect suffered, if any, by the Defendant.

The testimony simply put at this point is the Defendant's mother testifies that as an infant, he suffered an ear infection, fever and convulsions and quit breathing, was taken to the hospital where she was advised, based on the testimony, that the ear infection and the fever had caused the convulsions. She does indicate that there was permanent brain damage, although it is difficult to assign a ton of weight to that as that particularly phraseology was specifically elicited using leading questions. Without being unfair to anybody, the likelihood of the witness articulating or identifying that term on her own is probably minimal, and so it's understandable that the leading technique was used to assist the witness who seemed to be struggling to find the words.

Regardless, what is reasonably clear is that there was some consequences that were relayed to the Defendant's mother as a result of the incident that she testified regarding.

Ultimately, the testimony revealed that the Defendant graduated from high school but that he was learning disabled. The extent of those disabilities is simply unclear. It's just not adequately articulated in order for the Court to put four corners on it, but it is reasonably clear that Mr. Cullen, through the Court's colloquy, may be characterized as somewhat lower functioning, and that's the best I can say. When I indicate that he is somewhat lower functioning, I make that observation as a layperson with experience in the law, not as a psychologist or a psychiatrist.

In the Court's observation, Mr. Cullen, as I think the record reflects, was able to engage in a colloquy with the Court. Where he was unclear as to the Court's questions, he was able to articulate that he didn't understand or that he wasn't sure. In other areas he was quite clear as it relates to roles of the participants in this proceeding. He certainly displayed an adequate comprehension of the role of [his defense counsel] in defending him. While he was unclear as to the title of [the prosecutor], when the Court provided some additional information as to [the prosecutor's] title, he was certainly able to understand the nature of the charge against him and the nature of the allegation, with a little bit of guidance he was able to explain that [the prosecutor] would be presenting evidence in

> support of the claim of rape, and that [defense counsel] would be attempting to do the opposite. He was able to understand that the jury would determine if he was guilty or not guilty; and, ultimately, was able to understand that I am the judge in the case, and that ultimately sentence upon a finding of guilt would be imposed by the judge.

{¶ 19} The court then read aloud the relevant statutes concerning competency to stand trial. The court then stated:

> The Court cannot find that a preponderance of evidence is established, that the Defendant is incompetent. There is evidence suggesting a mental disability. The extent of that is unclear. *But the Court is at least satisfied from his colloquy with Mr. Cullen that he is capable of understanding the nature and objective of the proceedings in assisting in his defense.*
>
> For those reasons, I do not find that the Defendant is incompetent or—I find that the Defendant is competent to stand trial.

(Emphasis added.)

{¶ 20} The court also issued a written entry formalizing its analysis and holding. The court noted in this entry that "the testimony of [Cullen's] mother suggested permanent brain injury, although no specifics nor diagnosis was provided." After describing its colloquy with Cullen concerning the roles of the various participants in the trial and noting its review of R.C. 2945.37, "particularly subsections (F) and (G)," the court stated that it "found that the presumption of competence had not been rebutted by the preponderance of the evidence. Therefore, the Defendant is competent to stand trial." In finding Cullen competent to stand trial, the court never specifically denied his written and subsequent oral request for a professional evaluation. But given the nature of the court's ruling on competency, the court implicitly denied Cullen's motion for an evaluation.

{¶ 21} The matter proceeded to a jury trial. The jury returned a guilty verdict. The court sentenced Cullen to life in prison, without parole. Cullen appealed, raising two assignments of error.

## II. Law and Analysis

## A. Competency to Stand Trial

{¶ 22} Cullen's first assignment of error states:

THE TRIAL COURT ERRED IN FINDING THE DEFENDANT COMPETENT TO STAND TRIAL AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 23} In support of his first assignment of error, Cullen argues that the trial court erred in the manner in which it assessed his competency to stand trial. Specifically, Cullen argues that the court, in assessing his knowledge of criminal proceedings, used leading questions, for which he provided one-word responses. Cullen states that he merely agreed with the court's assertions and did not demonstrate a true understanding of the criminal trial process. Cullen also argues the court improperly discounted his mother's testimony concerning his mental disability. Cullen states that the manifest weight of evidence supported a finding by a preponderance of the evidence that he was incompetent to stand trial.

### 1. Background: The Competency Hearing and Evaluation Statutes

{¶ 24} "[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution requires procedures adequate to 'protect a defendant's right not to be tried or convicted while incompetent to stand trial.'" *State v. Mills*, 173 Ohio St.3d 390, 2023-Ohio-4716, ¶ 10, quoting *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896 (1975). "Ohio has enacted a statute, R.C. 2945.37, that details procedures to protect this right."[2] *Id.*

{¶ 25} R.C. 2945.37(G) provides that "a defendant is presumed to be competent to stand trial." But this presumption can be overcome:

If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental

---

2. Cullen has not challenged the constitutionality of the statutory competency determination and evaluation procedures. We therefore do not need to examine whether the procedures themselves provide due process.

condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.[3]

R.C. 2945.37(G).

{¶ 26} R.C. 2945.37(B) provides that a court "shall" hold a hearing on the issue of competence when that issue is raised:

In a criminal action in a court of common pleas, * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court *shall* hold a hearing on the issue as provided in this section.

(Emphasis added.) R.C. 2945.37(E) provides a description of the evidence admissible at such a hearing:

The prosecutor and defense counsel may submit evidence on the issue of the defendant's competence to stand trial. A written report of the evaluation of the defendant may be admitted into evidence at the hearing by stipulation, but, if either the prosecution or defense objects to its admission, the report may be admitted under sections 2317.36 to 2317.38 of the Revised Code or any other applicable statute or rule.

{¶ 27} R.C. 2945.37(F) states that mental illnesses and intellectual disabilities do not automatically indicate incompetence:

The court shall not find a defendant incompetent to stand trial solely because the defendant is receiving or has received treatment as a voluntary or involuntary patient with a mental illness under Chapter 5122. or a voluntary or involuntary resident with an intellectual disability under Chapter 5123. of the Revised Code or because the defendant is receiving or has received psychotropic drugs or other medication, even if the defendant might become incompetent to stand trial without the drugs or medication.

---

3. This language is similar to that used by the United States Supreme Court, which, commenting on competency, has noted that "the test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788 (1960).

{¶ 28} This court has held, "An appellate court will not disturb a competency determination if there was 'some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him.'" *State v. Neely*, 12th Dist. Madison No. CA2002-02-002, 2002-Ohio-7146, ¶ 10, quoting *State v. Williams*, 23 Ohio St.3d 16, 19 (1986). Furthermore, we have held that a trial court's decision on competency will not be reversed absent an abuse of discretion. *Id.*, citing *State v. Clark*, 71 Ohio St.3d 466, 469 (1994).

### 2. Analysis:  Competency Determination

{¶ 29} Upon review of the record, we find that reliable, credible evidence supports the trial court's conclusion that Cullen was competent because he was "capable of understanding the nature and objective of the proceedings [against him and] in assisting in his defense." *See* R.C. 2945.37(G); *Williams* at 19. Over the course of two hearing dates, the court questioned Cullen as to his understanding of the criminal trial process. Through these colloquies, Cullen acknowledged that he understood that he was being accused of rape. He further acknowledged his understanding that his lawyer represented him in the proceedings and was there to help him "win" his case. Cullen stated that he understood that a jury would be present in the courtroom and that the jurors would decide whether he was guilty or not guilty. And he acknowledged his understanding that the judge's role in the process was to sentence him. Cullen did display confusion as to the role of the prosecutor. However, after the court briefly explained the prosecutor's role, Cullen indicated he understood. Also, Cullen stated on his own that the prosecutor was "[t]rying to pin something on me for something I didn't even do." While inartful and defensive, this statement demonstrated that Cullen understood the prosecutor's role. Thus, the record reflects that Cullen displayed a basic understanding of the nature and objective of the criminal proceedings.

{¶ 30} Cullen argues that his statements in these colloquies with the trial court were unreliable because of the—at times—leading manner in which the trial court questioned Cullen. He also contends that the court did not ask any questions about whether Cullen understood the severity of the accusation against him and did not ask if he understood the state's burden of proof.

{¶ 31} We do not find merit to Cullen's arguments in this regard. R.C. 2945.37 does not direct the court to conduct any specific inquiry of a defendant nor does it direct the court to ask specific questions regarding any aspect of the criminal trial process. The statute, for instance, does not require that the defendant demonstrate an understanding of the beyond-a-reasonable-doubt standard of proof. Nothing set forth in R.C. 2945.37 precluded the trial court from asking Cullen questions in the manner it chose. While it may have been beneficial for the court to question Cullen on his understanding of the burden of proof, such questioning was not required as a matter of law.

{¶ 32} The court did at times provide Cullen with some background information about the trial process and the roles of the various trial participants. However, on our review of the record, we do not find these questions to have been "leading" in a manner that undermined the reliability of Cullen's answers. The trial court, as the factfinder, is in a better position than this court to determine whether, in responding to the court's questions, Cullen was simply agreeing with the court or instead demonstrating an understanding of the nature and objective of the proceedings against him. Being in Cullen's presence during this questioning process would also help inform the trial court of the type and amount of questioning necessary to determine Cullen's understanding of the proceedings.

{¶ 33} Cullen also argues that the court ignored his mother's testimony. Contrary to this claim, the court expressly considered Harper's testimony, and did so on the record. The court discussed Harper's testimony in explaining its decision and noted her claim that Cullen

suffered permanent brain damage as an infant. The court noted that Harper was not a medical professional, that the term "brain damage" was supplied to her by defense counsel, and that it was unlikely Harper would have come up with this term on her own. But the court did not ignore her testimony, and it even concluded that Cullen was "somewhat lower functioning." Ultimately, the court acknowledged Harper's testimony but concluded that Cullen's answers during his colloquy with the court indicated he was competent.

{¶ 34} As demonstrated by the trial court's lengthy discussion of the reasons for its decision, the court very carefully considered the evidence before it and whether Cullen had overcome the statutory presumption that he was competent to stand trial. In detail, the court reviewed the evidence that had been presented. The court acknowledged that it had "provided some additional information as to [the prosecutor's] title," but that Cullen ultimately expressed his understanding of the trial proceedings and that he was able to help his own defense. And the court acknowledged that there was evidence that Cullen suffered a traumatic incident as an infant and also suffered from a mental disability. However, having a mental illness or intellectual disability is not, in itself, enough to support a claim of being incompetent to stand trial. *See State v. Lewis*, 12th Dist. Butler No. CA98-10-207, 1999 WL 596338, *2 (July 19, 1999), citing *State v. Berry*, 72 Ohio St.3d 354 (1995). Instead, the focus is on whether the defendant can understand the proceedings and assist in his defense. *Id*.

{¶ 35} Ultimately, the court found that Cullen had not overcome the presumption of competence. As discussed above, reliable, credible evidence supported the trial court's conclusion that Cullen "understood the nature and objective of the proceedings against him." *Williams*, 23 Ohio St.3d at 19. Therefore, the court did not abuse its discretion in finding Cullen competent to stand trial. We overrule Cullen's first assignment of error.

**B. Professional Competency Evaluation**

{¶ 36} Cullen's second assignment of error states:

THE TRIAL COURT ERRED BY NOT ORDERING A PROFESSIONAL [PSYCHOLOGICAL] EVALUATION PURSUANT TO ORC 2945.371.

{¶ 37} In support of his second assignment of error, Cullen argues that the trial court abused its discretion in failing to order a professional psychological evaluation.

{¶ 38} Several of the R.C. 2945.37 subsections cited in our discussion above regarding Cullen's first assignment of error mention competency evaluations. These competency evaluations are addressed in more detail by another statute, R.C. 2945.371. That statute provides:

If the issue of a defendant's competence to stand trial is raised * * * the court may order one or more evaluations of the defendant's present mental condition * * *. An examiner shall conduct the evaluation and the evaluation may be conducted through electronic means.

R.C. 2945.371(A). The statute expressly provides that a court "*may*" order one or more evaluations if the issue of a defendant's competency is raised. (Emphasis added.) Therefore, a competency evaluation is not required every time the issue of competency is raised by the defendant and the decision to order an evaluation is one within the sound discretion of the trial court. *State v. Ashdown*, 12th Dist. Butler No. CA2014-05-104, 2015-Ohio-1761, ¶ 31; *State v. Mackey*, 12th Dist. Warren No. CA99-06-065, 2000 WL 190033, *3 (Feb. 14, 2000).[4] Accordingly, we review a trial court's decision to grant or deny a request for an evaluation under the abuse-of-discretion standard. *Ashdown* at ¶ 31.

{¶ 39} As set forth in response to Cullen's first assignment of error, reliable, credible evidence supported the conclusion that Cullen understood the nature and objective of the

---

4. The dissent faults us for relying on *Ashdown* and *Mackey*. Dissenting Opinion, ¶ 32. We will address the dissent's criticism below.

proceedings against him. Under these circumstances, it was reasonable for the court to exercise its discretion and decline to order a competency evaluation. *Id.* Cullen has not demonstrated any error rising to the level of an abuse of discretion with respect to the trial court's denial of his request for an evaluation under R.C. 2945.371(A).

{¶ 40} We overrule Cullen's second assignment of error.

## C. Response to the Dissent

{¶ 41} Our respected colleague's dissenting opinion takes issue with multiple aspects of our above analysis regarding both assignments of error. Rather than respond to each and every disagreement expressed by the dissent, we will now address the main assumptions on which the dissent relies and explain why we believe the dissent is incorrect in making those assumptions. We will also address several more specific arguments made by the dissent. (The reader may wish to read the dissent before reading this section of our opinion.)

### 1. Was the trial court's questioning of Cullen improper?

{¶ 42} The dissent disagrees with our conclusion that the trial court did not err in finding Cullen competent. In doing so, the dissent states that the trial court questioned Cullen *prior to*, not during, the mandatory R.C. 2945.37(B) competency hearing, and suggests that the court's questioning of Cullen was somehow improper. Dissenting Opinion, ¶ 67-69. The dissent also concludes that "The trial court's colloquy with Cullen (which no one knew the court intended to rely upon in determining the legal test for competency) created an irregular proceeding affecting Cullen's substantial rights and usurped the role of a court-appointed licensed psychologist." Dissenting Opinion at ¶ 105. Finally, the dissent argues that the trial court effectively acted as a professional examiner during the colloquy and this examination "did not encompass the depth and breadth of inquiry necessary to act as a substitute for a qualified psychologist's findings." Dissenting Opinion at ¶ 86.

{¶ 43} But while the dissent raises these arguments, Cullen did not. Cullen never objected to the trial court judge's questioning of him (whether "prior to" or during the hearing) and never argued that the judge's questioning was improper or that the hearing itself was improper in any way. Nor did Cullen assign error on these bases or raise any of these arguments on appeal. These arguments are therefore not before us and we do not need to address them. *State v. Guzman-Martinez*, 12th Dist. Warren No. CA2010-06-059, 2011-Ohio-1310, ¶ 9 ("It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal"); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 19 (holding that appellate courts do not sit as self-directed boards of legal inquiry and research but instead preside as arbiters or legal questions *presented and argued* by the parties).

{¶ 44} But even if Cullen had raised these new arguments identified by the dissent, we disagree with the dissent's analysis. It is apparent to us that the judge's questioning of Cullen was part of the R.C. 2945.37(B) hearing. As explained above, the hearing was originally scheduled in January 2022. In fact the hearing commenced on that date, but it was continued and rescheduled multiple times to give Cullen's defense counsel time to obtain Cullen's medical records from his birth hospital in Texas. At the final pretrial hearing on June 14, 2022, Cullen's defense counsel provided an update on his efforts to obtain those records. The court then proceeded to question Cullen. During this colloquy the court explicitly noted that it was, at that very time, in the process of conducting the R.C. 2945.37(B) hearing. Specifically, the court stated, "And let's be clear, any statements that are made *during this hearing* cannot be used against Mr. Cullen in the case. This is the Court simply *assessing competency*." (Emphasis added.) While it is true that the judge questioned Cullen at the beginning of the hearing, and only after that questioning did Cullen call his mother to offer testimony, neither the text of R.C. 2945.37(B) nor any case law of

which we are aware prohibits the court from conducting the hearing in the manner it did, including by questioning Cullen directly.

{¶ 45} In fact, in *Ashdown* the appellant assigned error to the trial court for failing to conduct an R.C. 2945.37(B) competency hearing and we overruled that assignment. *Ashdown*, 2015-Ohio-1761 at ¶ 27, 32. Upon our review, we determined that the court did hold a competency hearing. *Id.* at ¶ 30. We stated, "Upon learning of defense counsel's concerns regarding Ashdown's competency, the trial court went on the record for the purpose of determining Ashdown's competency. Thereafter, Ashdown, his defense counsel, and the state all had the opportunity to address the court, *and the court had the opportunity to thoroughly question Ashdown*." (Emphasis added.) *Id*. We explained that this hearing, which included a colloquy directed by the judge, "was a competency hearing." *Id.* at ¶ 31.

{¶ 46} There are numerous other cases demonstrating that questioning by a judge— a colloquy—is a normal part of R.C. 2945.37(B) competency hearings. *E.g.*, *State v. Lozada*, 8th Dist. Cuyahoga No. 107827, 2020-Ohio-5008, ¶ 12 ("The colloquy, although brief, constituted the 'hearing' and satisfied the statutory concerns."); *State v. Voris*, 2d Dist. Miami No. 2021-CA-2, 2022-Ohio-152, ¶ 42-44 (relying on defendant's "responses to questions posed by the trial court" during third competency hearing in holding that trial court did not abuse its discretion in declining to order a third evaluation); *State v. Peeples*, 7th Dist. Mahoning No. 10 MA 132, 2012-Ohio-1149, ¶ 24 ("the court questioned [the defendant] extensively as to her understanding of the charges against her, the legal process, the role of the court, the jury, and the prosecutor, as well as her behavior before the court prior to and during the competency hearing").

{¶ 47} In any event, we are aware of no authority indicating that judges may not conduct a colloquy during a competency hearing, or that a defendant's answers to a judge's questions during such a hearing are "not evidence" and may not be considered in the

judge's determination of competency. And as to the dissent's argument that the court acted as the professional examiner, we disagree. The court was not acting as the examiner under R.C. 2945.371(A) but was instead acting in its role as a judge to determine whether an evaluation was needed. As set forth above, the statute expressly authorizes the court to exercise its discretion in this regard.

### 2. Did R.C. 2945.371(A) require the trial court to order an evaluation?

{¶ 48} The dissent states that "the majority interprets the phrase 'may order one or more evaluations' found in R.C. 2945.371(A) as granting authority not to order an evaluation for the evidentiary hearing," and states that our reasoning and interpretation in this regard are "questionable." Dissenting Opinion at ¶ 85. While the dissent does not engage in a detailed analysis of R.C. 2945.371(A)'s provision that a court "may order one or more" evaluations, we understand the dissent to suggest that this language indicates that a court *must* order at least one evaluation when requested.

{¶ 49} We disagree with that suggestion, and we do not believe the dissent's apparent reading of the statute is the proper, natural reading of the text of the statute. As we stated above, the statute expressly provides that a court "*may*" order "one or more evaluations" if the issue of a defendant's competency is raised. (Emphasis added.) *Id.* As used in the statute, the word "may" modifies the entire phrase "one or more evaluations". Thus a court "may" order "one" evaluation, and it "may" order "more than one" evaluation. Nothing in the text states or implies that when a court does not order "more than one" evaluation, it *shall* order "one" evaluation. To be clear, this means that under R.C. 2945.371(A) a trial court may apply its discretion in determining whether to order *one* evaluation, *more than one* evaluation, or *zero* evaluations when the issue of a defendant's competence is raised.

{¶ 50} Our reading of the statute is supported by ample case law, both within our

district and in other districts.

{¶ 51} First, our court has read the phrase "may order one or more" in R.C. 2945.371(A) in the same manner as we do today in at least two cases. In *Ashdown*, we concluded that

> [g]iven the lucidity of Ashdown's responses to the court's questions at the January 7 hearing about the nature and objective of the proceedings against him, and the knowledge of trial procedure that Ashdown demonstrated, it was reasonable for the court to conclude Ashdown was competent to stand trial, *and to decline to order a competency evaluation.*

(Emphasis added.) *Ashdown*, 2015-Ohio-1761 at ¶ 31. And in *State v. Whitling*, 12th Dist. Butler No. CA2016-10-202, 2018-Ohio-1360, ¶ 18, citing R.C. 2945.371(A), we noted that ordering an evaluation "is permitted by statute in determining a defendant's competency, but is not required in every case."

{¶ 52} Second, all Ohio appellate courts that have addressed the issue apparently agree with our conclusion that the text of R.C. 2945.371(A) permits a trial court to decline to order any evaluation at all. *E.g.*, *State v. Wisler*, 1st Dist. Hamilton No. C-180326, 2019-Ohio-2363, ¶ 9-12 (noting "may" language in R.C. 2945.371(A) and affirming trial court's denial of a single requested competency evaluation); *State v. McCoy*, 2d Dist. Champaign No. 2023-CA-11, 2024-Ohio-98, ¶ 11 (stating that the use of "may" in R.C. 2945.371(A) indicates that no competency evaluation is required every time that the issue of a defendant's mental condition is raised, rather, the wording of R.C. 2945.371(A) implies that the ordering of an examination is a matter within the discretion of the trial court); *State v. Scott*, 3d Dist. Allen No. 1-21-51, 2022-Ohio-2820, ¶ 9 ("The use of the word 'may' in division (A) indicates that the decision whether to order a competency evaluation is a matter within the trial court's discretion"); *State v. Clark*, 4th Dist. Athens No. 07CA9, 2007-Ohio-6621, ¶ 17-22 (noting that a court has discretion to order a competency evaluation and affirming the

refusal to refer the defendant for a competency evaluation); *State v. Dye*, 5th Dist. Licking No. 99-CA-2, 1999 WL 770619, *2 (Sept. 2, 1999) (noting the "may" language and holding that a competency evaluation is not required under R.C. 2945.371 every time the issue of a defendant's mental condition is raised); *State v. Stevens*, 7th Dist. Columbiana No. 19 CO 0049, 2022-Ohio-2, ¶ 47 ("R.C. 2945.371(A) does not require the court to order *even one* sanity evaluation as the language is permissive, not mandatory") (Emphasis added); *State v. Woodley*, 8th Dist. Cuyahoga No. 80732, 2003-Ohio-1950, ¶ 26 ("While the trial court was required to hold a hearing regarding appellant's competency to stand trial, it had the discretion to order a mental evaluation based upon the evidence submitted"); *State v. Johnson*, 9th Dist. Summit No. 25620, 2011-Ohio-6417, ¶ 12 ("While the trial court must conduct a hearing if the issue of competency is raised prior to trial, the trial court judge is not mandated to actually order a competency evaluation. Rather, the decision to order a competency evaluation is within the discretion of the trial court."); *State v. Patton*, 10th Dist. Franklin No. 08AP-800, 2009-Ohio-1382, ¶ 8 ("a competency evaluation is not required by R.C. 2945.371 every time the issue of a defendant's mental condition is raised"); *State v. Bailey*, 90 Ohio App.3d 58, 67 (11th Dist.1992) ("If this evidence raises a genuine question as to the defendant's competency, the court can order that one or more evaluations be performed. If it does not, the court can find the defendant competent and proceed to trial").

{¶ 53} We are unaware of any Ohio courts of appeals that have concluded or suggested, like the dissent, that R.C. 2945.371(A)'s language stating that a trial court "may order one or more" evaluations means that a trial court "*shall*" order "one" evaluation when a defendant requests an evaluation but the court declines to order "more than one" evaluation.

### 3. Did we misapply *Ashdown* and *Mackey*?

{¶ 54} As stated above in footnote four, the dissent faults us for relying on *Ashdown*

and *Mackey* in support of the proposition that an evaluation under R.C. 2945.371(A) is discretionary. Dissenting Opinion, ¶ 94.

{¶ 55} In criticizing our reliance on *Ashdown*, the dissent states that in that case "there was no formal or written motion raising the issue of incompetency," that no competency hearing was "scheduled," that competency was merely "*informally mentioned* (in an ambiguous manner) at a pretrial," and that "the suggestion that a competency evaluation was necessary *only* occurred for the first time on appeal," making *Ashdown* "[h]ardly similar to Cullen's scenario." (Emphasis sic.) Dissenting Opinion at ¶ 95. But in fact, this court noted in *Ashdown* that competency *was* raised before the trial court when it stated:

> During the January 7 hearing, counsel twice asked the court to question Ashdown to determine "whether or not [the court] needs to maybe do some competency evaluations." We find that defense counsel's oral requests to the court to consider a competency evaluation did in fact constitute the motion Ashdown alleges counsel failed to make.

*Ashdown*, 2015-Ohio-1761 at ¶ 24. We also found that the trial court *did* conduct a competency hearing. *Id.* at ¶ 30. We therefore disagree with the dissent's criticisms of our reliance on *Ashdown*.

{¶ 56} Next, the dissent argues that the facts and procedural posture in *Mackey* were distinguishable from those in the case before us. Dissenting Opinion, ¶ 96. True enough. There were some important differences. But we merely cited *Mackey* above (see ¶ 38) for support of the statement in *Ashdown* that "pursuant to R.C. 2945.371(A), the decision to order competency evaluations is within the sound discretion of the trial court, and we review the court's decision not to order a competency evaluation under an abuse of discretion standard." *Ashdown*, 2015-Ohio-1761 at ¶ 31. This principle of law is cited in numerous cases, as we thoroughly reviewed in the preceding section, and the fact that *Mackey*

involves different facts and a different procedural posture than in the case before us does not make this general statement of law inapplicable here.

### 4. Does our analysis conflict with *Lozada*?

{¶ 57} The dissent states that the majority opinion failed to apply important legal principles articulated in *State v. Lozada*, 8th Dist. Cuyahoga No. 107827, 2020-Ohio-5008, and is in conflict with *Lozada*. Dissenting Opinion, ¶ 21. We disagree.

{¶ 58} In *Lozada*, the appellant criminal defendant argued that the trial court erred because it failed to conduct "a proper competency hearing with a report prepared by a medical professional necessary to make a competency determination prior to accepting [his] guilty plea." *Id.* at ¶ 10. The Eighth District rejected this argument, noting that a court "may" order an evaluation if the issue of competence is timely raised. *Id.* at ¶ 11, citing R.C. 2945.371(A). The Eighth District also noted that "An evaluation is not statutorily required." *Id.*, citing *State v. Pennington*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-5426, ¶ 25, in turn citing *Woodley*, 2003-Ohio-1950 at ¶ 26 and *Johnson*, 2011-Ohio-6417 at ¶ 12. The Eighth District then explained that "the right to an evaluation does not rise to the level of being a constitutional guarantee unless the record contains '"sufficient indicia of incompetence," such that the inquiry is necessary to ensure the defendant's right to a fair trial.'" *Id.*, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 160, in turn quoting *State v. Skatzes*, 104 Ohio St. 3d 195, 2004-Ohio-6391 and *State v. Berry*, 72 Ohio St.3d 354. The Eighth District then found that Lozada "failed to reference or even identify any indicia of incompetence that would support a claim necessitating the constitutional analysis with respect to his right to an evaluation." *Id.*, citing App.R. 16(A)(7). The Eighth District's analysis is consistent with our analysis regarding R.C. 2945.371(A).

{¶ 59} Lozada also pointed out that when he raised the issue of competency on the morning of trial, the trial court merely conducted a brief colloquy and then concluded an

evaluation was unnecessary, and argued that this meant that the court did not conduct a competency hearing as required. *Id.* at ¶ 12. The Eighth District rejected this argument, concluding that "The colloquy, although brief, constituted the 'hearing' and satisfied the statutory concerns. There is no requirement under Ohio law that a hearing must be separately conducted or on a future date." *Id.* In reaching this conclusion, the Eighth District noted that Lozada did not object to the "cursory nature of the competency inquiry[,]" but instead only objected to the trial court's "refusal to order an evaluation before reaching a conclusion as to Lozada's competency to stand trial, which was not constitutionally or statutorily required in this case based on the aforementioned analysis." *Id.* Again, we see nothing about this analysis that is inconsistent with our analysis above.

{¶ 60} In fact, *Lozada* is strikingly similar to this case. It is unclear why the dissent concludes that our disposition of Cullen's second assignment of error "conflicts" with *Lozada*. To the contrary, when Lozada made arguments similar to those now raised by the dissent, the Eighth District rejected those arguments using reasoning similar to that applied in our opinion above.

### III. Conclusion

{¶ 61} Reliable, credible evidence supported the finding that Cullen understood the nature and objective of the proceedings against him, and the court did not abuse its discretion in finding that Cullen was competent to stand trial. And the court did not abuse its discretion in declining to order a professional competency evaluation. We overrule both of Cullen's assignments of error.

{¶ 62} Judgment affirmed.

S. POWELL, P.J., concurs.

PIPER, J., dissents.

- 22 -

**PIPER, J., dissenting.**

{¶ 63} Cullen's counsel argues the trial court abused its discretion in failing to order a professional psychologist to evaluate his client. Once an evaluation has been conducted the qualified expert must file a report with findings, factual details upon which the findings are based, and findings or recommendations as to the individual's mental condition regarding competency to stand trial. R.C. 2945.371(H). Without an evaluation Cullen's counsel lacked a report to present to the court for its consideration at the evidentiary hearing. Cullen's subsequent jury trial led to a conviction.[5]

**A Brief Overview**

{¶ 64} The trial court noted Cullen's counsel had a good faith basis to believe Cullen suffered a mental illness or mental disease that affected him. The trial court scheduled an evidentiary hearing and Cullen's counsel filed a motion well in advance of the hearing requesting an independent expert evaluation. The motion was unopposed by the state and the need for an independent evaluation was brought up more than once. The majority indicates the Eighth District decision in *Lozada* stands for the proposition there is no right to an evaluation—that it is always discretionary despite the circumstances. However, discretion is exercised dependent upon the circumstances. Discretion was not abused in *Lozada* for obvious reasons, but discretion is commonly abused if an accused is denied due process, i.e. the lack of a fair proceeding affecting a substantial right.

---

5. The majority makes considerable effort to refute the necessity of Ohio's statutory framework as applied to Cullen's factual circumstances and further discounts reasoning in the dissent, in part, because Cullen didn't expound on the importance of that framework to the depth the dissent might. My different understanding of the law and its importance in the application to Cullen's circumstances, while unpersuasive to the majority, is not attempted as criticism, or presented as arguments for the sake of disagreement. I react not to the majority's expression of their opinions, but to upholding the individual protections of those embroiled in our legal system who are incapable of protecting themselves. This makes it important to understand the slightest distinctions in cases cited when reaching conclusions pertaining to Cullen's circumstances.

{¶ 65} In *Lozada* the issue of incompetency to stand trial was only raised the morning of trial *without any* indication of incompetency. The Eighth District held it was harmless error to not hold an evidentiary hearing because a hollow claim of incompetency the morning of trial without a basis supporting the claim didn't necessitate an evidentiary hearing. In other words, there simply was no indicia of incompetency requiring implementation of Ohio's statutory protections. However, the trial court herein *did* schedule an evidentiary hearing (which took place) due to the indicia of Cullen's incompetency supporting counsel's claim his client was not competent to stand trial.

{¶ 66} The failure to grant Cullen's motion for a court-appointed evaluation prevented Cullen's counsel from developing evidence sufficient to meet his burden of proof as to the extent of Cullen's incompetency to stand trial. The significance of Cullen's childhood brain damage which resulted in a permanent disability remained unexplored and unknown. A report from an expert would have delved into the significance of Cullen's learning disability and the records which resulted in Social Security benefits. The trial court made more than one reference regarding the lack of insight into Cullen's mental condition due to missing information.

### Trial Court's Pre-Hearing "Examination"

{¶ 67} Prior to commencement of the evidentiary hearing, the trial court assumed the role of educating Cullen as to the proceedings. Unbeknownst to the parties, the trial court was also examining Cullen's competency to stand trial. The majority faults Cullen's counsel for not objecting to the court's dialogue prior to the evidentiary hearing. However, relying on the lack of an objection seems harsh when counsel did not know the court's purpose in addressing his client. Furthermore, attorneys are trained to be respectful and deferential to a trial court's control of the courtroom. I find it is unfair to fault counsel for not interrupting the court with an objection under these circumstances.

{¶ 68} Cullen was also respectful and cooperated with the trial court's explanations and questions. The transcript reveals that Cullen, when asked, repeated what he was told by the judge. When called upon to agree with the court, Cullen did so. Cullen answered leading questions, often with one-word responses, and appeased the court by saying he understood. Afterwards, the court noted Cullen showed "some confusion."

{¶ 69} Neither Cullen's attorney nor the state was given an opportunity to follow up on the court's questioning. Neither Cullen nor his counsel were given an opportunity to offer explanations or expound upon the court's questions or Cullen's answers. The majority insists this was part of the evidentiary hearing, but Cullen was not under oath and had no obligation (or maybe no capability) to volunteer information. The record demonstrates that in assuming the de facto role of an expert evaluator, the trial court inadvertently strayed from its judicial role as an independent, impartial factfinder.[6]

***Evidentiary Hearing***

{¶ 70} After the court explained the proceedings and briefly questioned Cullen, the evidentiary hearing commenced with Cullen's attorney calling Cullen's mother as a witness to Cullen's permanent brain injury and resulting disabilities. Unexpectantly, Cullen's mother was restricted in giving testimony because she was not a medical doctor. She was prohibited from testifying about the diagnosis given to her regarding his brain injury. Later, when pronouncing Cullen as competent to stand trial, the court was critical of the fact that counsel had not presented a diagnosis for Cullen. The court also suggested that the term "brain injury" was a term that she was likely unable to come up with on her own (although there is also a reasonable inference to the contrary that a mother would know the location of her child's injury). Notably, she was not found to lack credibility.

---

6. My colleagues insist the trial court's preliminary comments and questions prior to the evidentiary hearing are in fact evidence; yet the trial court had no authority to have Cullen testify.

{¶ 71} After the testimony, the trial court indicated it was convinced from its dialogue with Cullen that he was legally competent to stand trial. The court found it was "at least satisfied from his [sic] colloquy with Mr. Cullen that he is capable of understanding the nature and objective of the proceedings in assisting in his defense." However, there was no discussion which showed insight into Cullen's memory, his communication abilities, or his level of comprehension. There was no recognition Cullen knew what it meant to have a defense. There was no indication Cullen comprehended what type of behavior constituted sex acts, let alone rape. Nothing indicated Cullen's capability to assist his attorney or that Cullen was aware of the seriousness of the proceedings or the nature of the rape charge or how he was alleged to have committed it.

{¶ 72} The court acknowledged its layperson observations would be different than those of a psychologist. Yet the court replaced the report from a professional, qualified psychologist with its own brief exchange prior to the evidentiary hearing. Inconsistent with not permitting a court-appointed psychologist to produce a report for consideration, the court noted that the effects of Cullen's diminished I.Q. remained unknown. One can only speculate how diminished Cullen's I.Q. was.

{¶ 73} After the evidentiary hearing the record is clear the court would have liked more information, which it could have had from a detailed report after a comprehensive evaluation from a court-appointed expert.

### Legal Presumption of Competency

{¶ 74} Despite the lack of findings from an expert's report the court concluded the legal presumption of competency had not been rebutted with factual evidence. Obviously, without a professional expert evaluation, Cullen's counsel was handcuffed from providing the court with professional information as to the depth and scope of Cullen's mental condition. This process denied Cullen meaningful due process and left doubt as to whether

Cullen was competent and capable of assisting counsel in a defense.[7]

{¶ 75} The court's comments indicated Cullen's developmentally delayed mental condition remained unquantified, saying: "[t]he exact nature of that remains unclear due to the inability to acquire any medical records through nobody's fault. * * * [t]he extent of those disabilities is simply unclear.  It's just not adequately articulated * * *."  The court acknowledged that Cullen was observed as "lower functioning" so unfortunately, and unintentionally, the fault of not having details provided by a professional lie with the court.

{¶ 76} The trial court noted its in-court observations were only those of a layperson "not as a psychologist," which suggested the perspective of a licensed psychologist would be different due to specialized training, education, and experience.  In the absence of an evaluation from a court-approved psychologist, the issue of competency was left undeveloped and unknown.[8]

**Competency and Statutory Protections**

{¶ 77} Requiring a defendant to stand trial when legally incompetent violates fundamental constitutional principles of fairness.  *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, ¶ 21.  State procedures are therefore required to adequately protect against violations of these constitutional principles.  *State v. Lawson,* 165 Ohio St.3d 445, 453, 2021-Ohio-3566, ¶ 46.  The Ohio Supreme Court recently restated its theme that there must be meaningful access to justice:

> The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution *requires procedures* adequate to protect a

---

7. The majority characterizes some of this dissent's reasoning and conclusions to be "arguments," "assumptions" and "criticisms."  I believe my conclusions are supported by Ohio law, however, I respect the majority's ardent conclusions to the contrary.

8. Joseph Heller's fictional Captain John Yossarian would appreciate this real-life Catch-22—an attorney can't meet the burden of proof to establish his client is incompetent to stand trial unless a mental evaluation is presented which indicates the client is incompetent to stand trial, but the request for an expert evaluation to prove incompetency will be denied unless the attorney can prove the client is incompetent prior to trial.

defendant's right not to be tried or convicted while incompetent to stand trial. *Ohio has enacted a statute, R.C. 2945.37, that details procedures to protect this right.* (emphasis added).

*State v. Mills,* 173 Ohio St.3d 390, 2023-Ohio-4716, ¶ 10 (citations omitted). The question then becomes did the proceedings herein "adequately protect" Cullen by applying Ohio's enacted framework detailing procedures to protect the right not to be tried or convicted while incompetent.

{¶ 78} Legal incompetency is not strictly a factual decision designed to be derived from a layman's impression. Otherwise, it would be submitted for a jury to determine. "'The test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.* at ¶ 11, quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788 (1960). The test involves a discipline of study outside the realm of law. Therefore, Ohio's statutory framework makes use of qualified, specialized experts to produce detailed findings for a court's consideration based upon competent, credible evidence.

{¶ 79} "'Common sense dictates that no defendant can make a record of the lack of competency absent the findings and hearings contemplated by R.C. 2945.37 and 2945.371.'" *Hough* at ¶ 37, quoting *State v. Were,* 94 Ohio St.3d 173, 177 (2002). A motion requesting an evaluation needs only raise a viable issue as to competency which then requires that facts be gathered and evaluated at a subsequent evidentiary hearing. *Hough* at ¶ 24. To protect the client's interests, counsel is not required to disclose the factual basis for counsel's concerns in a public forum until a formal competency hearing is conducted. *Id*. "And regardless, a defendant's in-court demeanor does not permit a trial court to dispense with a competency hearing when one is otherwise required." *Id* at ¶ 29. In Cullen's case, a hearing had been scheduled for counsel to present evidence aimed at meeting the

standard of proof.

{¶ 80} When it comes to gathering information and evaluating behavior, R.C. 2945.37 mandates the court-appointed expert be a psychiatrist or licensed psychologist. Once a hearing has been scheduled for the defense counsel to present evidence, there is no procedure for the trial court to assume the role of a psychologist. Contrary to the majority's caselaw excerpts (not fact specific in context), there is no caselaw that supports a trial judge acting as the examiner at an evidentiary hearing.

{¶ 81} The expert's report provides the court with findings and recommendations *after* a *comprehensive* evaluation. R.C. 2945.371(H) is part of the statutory scheme *Mills* referenced as protecting an incompetent person's constitutional right not to stand trial. The qualified expert's report must include detailed, relevant information as to whether the legal test of competency can be met, i.e. whether the defendant can understand the objective of the proceedings and whether the defendant can assist their counsel in presenting a defense.

{¶ 82} Repeating the name of the charge and saying things like, "I didn't do anything wrong," doesn't reveal a rational and factual understanding of what the person is accused of doing. General assertions of innocence don't demonstrate the person possesses the cognitive function and communication abilities necessary to assist counsel in showing why, or how, it can be established they "didn't do anything wrong."

{¶ 83} The right to present an expert evaluation at an evidentiary hearing rises to the level of a constitutional guarantee to ensure a fair process. *State v. Lozada,* 8th Dist. Cuyahoga No. 107827, 2020-Ohio-5008, ¶ 11. *Lozada* analyzed whether the factual circumstances required an evidentiary *hearing* needed to occur, not whether an expert examination and report were required when requested to present at the hearing. However, the majority fails to apply the important legal principles articulated in *Lozada* and in that

regard is in conflict.[9]

{¶ 84} In three paragraphs the majority opinion rejects Cullen's second assignment of error which argues the need for an expert evaluation and report pursuant to R.C. 2924.371. However, this raises two concerns regarding the majority's reasoning.

{¶ 85} First, the majority reasons the evaluation was unnecessary for the evidentiary hearing because the majority affirmed the trial court's determination Cullen was competent to stand trial in the first assignment of error. Such reasoning presumes there was no abuse of discretion in not granting Cullen a right to have an evaluation. This reasoning is conclusory, and circuitous. Second, the majority interprets the phrase "may order one or more evaluations" found in R.C. 2945.371(A) as granting authority *not* to order an evaluation for the evidentiary hearing. However, the reasoning and interpretation is questionable.

{¶ 86} The trial court's irregular in-court examination of Cullen was not evidence. *See Hough*, 2022-Ohio-4436 at ¶ 29. (A defendant's in-court demeanor does not permit a trial court to dispense with an evidentiary hearing on competency). Additionally, the trial court's in-court "examination" did not encompass the depth and breadth of inquiry necessary to act as a substitute for a qualified psychologist's findings. This is abundantly evident when reviewing Ohio's codified test for competency and the transcript of the in-court "interview" conducted by the court. Furthermore, a statutory interpretation that abandons protections otherwise accorded by constitutional principles of fundamental fairness cannot withstand scrutiny. The majority's interpretation fails to comply with the principles codified in R.C. 2945.37 protecting both the incompetent individual as well as the state's interest in ensuring defendants a fair trial. There is good reason more than one evaluation was

---

9. The majority acknowledges in footnote 2 they had "no need to examine" the required due process found in the statutory procedures.

codified in Ohio's statutory framework.[10]

{¶ 87} Even before *Mills*, the Ohio Supreme Court acknowledged the importance of the principles involved in competency determinations prior to trial:

> The Supreme Court has long held that convicting a defendant while he is legally incompetent violates the United States Constitution. "[T]he conviction of an accused person while he is legally incompetent violates due process and * * * state procedures must be adequate to protect this right." *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), citing *Bishop v. United Sates*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

*State v. Lawson*, 165 Ohio St.3d 445, 453, 2021-Ohio-3566, ¶ 46.

{¶ 88} In codifying meaningful access to psychological tools in an adversarial system, more than one evaluation is authorized because Ohio's General Assembly recognized that experts in the field of psychology may "disagree widely and frequently on what constitutes mental illness [and] on the appropriate diagnosis to be attached to given behavior and symptoms * * *." *Ake v. Oklahoma*, 470 U.S. 68, 81, 105 S.Ct. 1087 (1985).

{¶ 89} Therefore, Ohio's framework, given a plain reading as written, assures the protections necessary for an accurate disposition while simultaneously creating a level playing field in an adversarial system of criminal justice. If the state or the defendant seeks to oppose an expert's competency evaluation and report, upon request the court may order additional experts to conduct evaluations and reports prior to the evidentiary hearing.[11]

{¶ 90} Ohio appellate courts have reversed trial courts when a suggestion of incompetency has been left undeveloped. *State v. Harris*, 8th Dist. Cuyahoga No. 102124,

---

10. The majority's interpretation does not address subsection (B) of R.C. 2945.371. Subsection (B) states: "If the court orders more than one evaluation under division (A) * * * " which equates to a statutory implication the court will order at least one evaluation.

11. Neither *Lawson, Hough, Mills* nor Ohio's statutory framework indicates that when an evidentiary hearing is to take place, an indigent defendant's request for an appointed independent psychological evaluation may be summarily denied and replaced by a brief in-court interview conducted by the judge.

2015-Ohio-5409, ¶ 9. Even a plea of guilty cannot waive the right to a competency evaluation. *State v. McNeir,* 8th Dist. Cuyahoga No. 105417, 2018-Ohio-91, ¶ 25. R.C. 2945.371(A) indicates if the issue of a defendant's competence to stand trial is raised an "examiner shall conduct the evaluation." Ohio's statutory scheme makes no provision for a trial court to conduct a layman's question-and-answer session in order to replace a qualified, specialized examiner.

### *Statutory Tools*

{¶ 91} Cullen's counsel only asked for the basic tools needed to develop the record. *Ake* at 77, quoting *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437 ("fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system'"). One of the "basic tools" is the appointment of an expert codified in R.C. 2945.371(A) which in turn requires findings expressed in a report.

{¶ 92} However, Cullen was denied access to an expert (qualified by specialized training, education, and experience) to evaluate and measure the extent of his disabilities within the confines of legal standards. Without a specialized professional familiar with Ohio's statutory standards and requirements, Cullen's counsel had a futile task, Sisyphean in nature.[12] The purpose of an evidentiary competency hearing must not be rendered meaningless due to the lack of the expertise necessary to provide relevant information to assist an impartial tribunal.

{¶ 93} The record reveals a timely written, and separate oral, request for an independent psychological evaluation. The trial court acknowledged the indicia of Cullen's incompetency possessed a good faith basis. The matter was set for an evidentiary hearing. Counsel was not required to report his observations of Cullen or reveal confidential

---

12. The gods forced the mythological figure Sisyphus to push for eternity an immense boulder uphill only to have the boulder roll back down—the task being impossible to complete.

- 32 -

interactions. The state had not objected to the request or filed any opposition; an expert evaluation was the best practice. Without this statutory best practice, the mandated competency hearing lacked a thorough assessment and the record remained undeveloped, as even the trial court acknowledged.

{¶ 94} Many of the cases relied upon by my colleagues are different in factual ways that render them inapplicable to Cullen's scenario. For example, the majority opinion cites *State v. Ashdown*, 12th Dist. Butler CA2014-05-104, 2015-Ohio-1761, and *State v. Mackey*, 12th Dist. Warren CA99-06-065, 2000 WL 190033, to suggest an evaluation wasn't required for the evidentiary hearing. While factual differences may seem subtle, they are nevertheless significant.

{¶ 95} In *Ashdown*, there was no formal or written motion raising the issue of incompetency (as there was in the present matter). *Ashdown* never had a competency hearing scheduled. Rather competency was *informally mentioned* (in an ambiguous manner) at a pretrial. Counsel mentioned that the client may have visions or be making decisions based on faith or delusions that everything was going to be all right. Counsel *invited* the court to talk to his client. Observing no irrational behavior or ideations the trial court did not find it necessary to *sua sponte* order an evaluation. The suggestion that a competency evaluation was necessary *only* occurred for the first time on appeal. Hardly similar to Cullen's scenario.

{¶ 96} In *Mackey*, there were *two* expert evaluations which addressed the issue of Mackey's competency. Both Dr. Manges and Dr. Bobbie G. Hopes (both licensed forensic psychologists) possessed substantial expertise and experience with insanity and competency evaluations. Both *presented a wealth of information* to assist the court in considering the defendant's competency. Again, nothing remotely similar to Cullen's scenario.

{¶ 97} Reliance on *Ashdown* and *Mackey* for the proposition that Cullen's circumstances didn't require an expert to evaluate and report findings for the court's consideration is perplexing. The majority's perspective seems to be that the discretion to deny counsel a psychological evaluation for his client is permissible at any stage of the proceedings and regardless of the particular circumstances.

{¶ 98} The trial court here relied upon its subjective layperson impressions as to Cullen's competency to stand trial. No quantification was elicited in the colloquy as to Cullen's memory function, ability for retention and recall, communication skills or comprehension, and the ability to reason necessary to assist in his defense or understand the nature and objective of the proceedings against him. Reliance upon a non-factual presumption as to Cullen's cognitive disabilities was misplaced when Ohio's statutory scheme envisions a specialized, qualified expert evaluation resulting in specific findings.[13]

{¶ 99} The precedent established today signals competency evaluations are easily disregarded. A court needs only to conduct a cursory in-court interview with the defendant using leading questions resulting in one-word answers from a compliant defendant prior to evidence being taken, then permit counsel to struggle in meeting the burden of proof necessary without an evaluation and detailed report. Those with money can retain an expert, while the indigent will go unprotected by the disregard of Ohio's statutory framework.

{¶ 100} Proceeding on such limited information nullifies the clear statutory purpose of R.C. 2945.37 and 2945.371 and offends constitutional due process. Once the evidentiary

---

13. A qualified psychologist would have used interview techniques and often specialized testing in an informal private environment. Professional expertise would have documented observations of demeanor and thought process and gathered behavioral history. If warranted, a psychologist would seek records from Cullen's learning disability classes and from Cullen's Social Security disability file. There is an expertise necessary to determine a person's cognitive functioning—the ability for rational thought and understanding. Equally important, a qualified psychologist can expose an individual's capabilities and detect malingers or those feigning their mental condition. Much more often than not an offender is found to be competent despite mental disorders or psychological dysfunction.

hearing was scheduled, the exercise of discretion to deny indigent Cullen an independent evaluation was error.

### Irregular Proceeding

{¶ 101}   Prior to the hearing the court helped Cullen identify certain persons and their respective role in the proceedings.  Cullen repeated the information directed to him.  The trial court concluded that Cullen knew the name of the charge in the indictment and that he could assist in his defense because he denied doing anything wrong.  In context of the legal test for incompetency, an in-depth review of the question-and-answer session prior to the evidentiary hearing is not as reassuring as the majority's isolated excerpts portray.[14]

{¶ 102}   For example, when Cullen was asked if he knew who the victim was (a child he had resided with many years ago), he replied, "No."  The state immediately pointed out to Cullen he had previously been informed days before who the alleged victim was.  While this could mean Cullen was being untruthful in indicating he did not know the identity of the victim, it also could mean Cullen's brain injury left him with impaired memory, diminished retention, or limited comprehension.  Such mental conditions are not unusual to brain injury.

{¶ 103}   The trial court found it significant that no diagnosis for Cullen's condition was presented at the hearing.  However, this is the precise reason counsel requested a court-appointed expert evaluation.  Notably, when Cullen's mother attempted to testify about the diagnosis she received for Cullen, the state's objection was sustained.  A licensed psychologist's report would have delved into any support that existed regarding Cullen's past brain damage and render an assessment of any current lingering effects.

{¶ 104}   Regardless, the trial court's entry never concluded Cullen had the ability to

---

14. As an interesting side note, the trial court understood counsel needed to use leading questions with Cullen's mother regarding Cullen's brain damage because she was struggling to find the words.  This same reasoning would suggest the trial court used leading questions with "developmentally delayed" Cullen due to his difficulty with words.

understand the nature and objective of the proceedings against him or that he could assist counsel in defense of the charge. While the entry referenced R.C. 2945.37(G) for the presumption of competency, it summarily concluded Cullen was competent. The court's colloquy also had little analysis and was insufficient to replace a professional evaluation and the findings required in R.C. 2945.371.

{¶ 105} In *State v. Campbell*, 12th Dist. Clermont No. CA2022-03-008, 2023-Ohio-2815, we held that a trial court's irregular procedure can affect a defendant's substantial rights. *Id.* at ¶ 23. While a court is not prevented from asking questions, the court risks abandoning its role as a neutral and detached body to which every defendant is entitled. We concluded the court went beyond the role of a neutral factfinder impartially applying the law. *Id.* at ¶ 22. The trial court's colloquy with Cullen (which no one knew the court intended to rely upon in determining the legal test for competency) created an irregular proceeding affecting Cullen's substantial rights and usurped the role of a court-appointed licensed psychologist.

{¶ 106} The circumstances in *Voris* and *Peeples*, which the majority relies upon, were also very different than the circumstances in Cullen's situation. In *Peeples*, there *was* a competency evaluation ordered. *State v. Peeples*, 7th Dist. Mahoning No. 10MA 132, 2012-Ohio-1149. There was *nothing* indicating incompetency either "during the hearing, prior to the hearing, or after the hearing." *Id.* at ¶ 24. In *Voris*, three reports were presented indicating there were no issues regarding competency and no prior history of any mental health issues. *State v. Voris*, 2d Dist. Miami No. 2021-CA-2, 2022-Ohio-152. Additionally, in both cases the defendants subsequently entered, knowingly, intelligently, and voluntarily, guilty pleas.

**Ensuring Adequate Dispositions**

{¶ 107} Cognitive tests reveal important indicators regarding incompetency. *Hough*,

2022-Ohio-4436 at ¶ 33. Few defendants can successfully demonstrate incompetency absent the findings contemplated by R.C. 2945.371. *Id*. at ¶ 37 (reversing and vacating the conviction where the appellate court improperly discounted indicators of incompetency). It is true the mere existence of mental disorders, diminished capacity, and mental illness *alone* may not warrant an incompetency finding because it depends on the severity of the impairment. However, these conditions can be measured by a professionally trained and specially qualified expert and placed in context of any other evidence. *Id*. at ¶ 30.

{¶ 108} The codification of R.C. 2945.371 safeguards the constitutional principles of due process in granting a defendant the development of evidence. The costs and inconvenience are worthy of providing the constitutionally codified protections—both to the state and the individual. Both have a compelling interest in accurate dispositions regarding psychological mental conditions. *Ake*, 470 U.S. at 78-80. Only after a thorough inquiry can an impartial court assign credibility and weigh the evidence reported by an expert along with any other evidence provided by counsel for the court's consideration.[15]

## Conclusion

{¶ 109} Commonsensically, mental disorders, brain injury, and diminished intellect can be unique in magnitude, but they can be quantified—by an experienced, qualified expert. The effects and consequences of disorders and mental impairments on cognitive abilities are individualized to the person. The in-court "colloquy" such as occurred herein was not a substitute for an out-of-court independent evaluation by a qualified court appointed expert. An evidentiary hearing necessitates an appointed independent expert for an indigent defendant upon a motion raising indicia of incompetency. It becomes an abuse

---

15. I understand well the economic strain placed on counties and courts in Ohio and, as well, the overall societal disdain for those who sexually abuse young children. However, I equally understand the importance of the presumption of innocence until convicted by the due process inherently required in fair proceedings.

of discretion not to grant such a motion in these circumstances. I would sustain Cullen's second assignment of error, reverse and vacate the conviction, and remand for further proceedings. The first assignment of error would then become moot.